## JOSH McCORD v. STATE.

No. A-39.    Opinion Filed April 7, 1909.

(101 Pac. 280.)

1. CONSTITUTIONAL LAW—Police Power. Under the police power, every state has the right to determine what is dangerous ·and injurious to the public health, the public morals, and the public safety of its inhabitants.

2. INTOXICATING LIQUORS—Interstate Commerce—State Jurisdiction. The traffic in intoxicating liquors is not unlawful or immoral per se, and the prohibition law of Oklahoma (chapter 69,

p. 594, Sess. Laws 1908), popularly known as the "Billups Bill," is intended to regulate the traffic in said liquors, and prohibit the use of said liquors as a beverage, but provides that the state superintendent shall have the power to purchase said liquors, and bring them into the state to be sold by the state for certain purposes, and making said sales a source of revenue, thus recognizing said liquors as a lawful commodity. For this reason the jurisdiction of the state does not attach to interstate shipments of intoxicating liquors until they reach the point of destination.

3. SAME. The prohibitory law, as enacted, is within the constitutional limits, and does not, by express language or by implication, relate to interstate commerce transactions.

4. SAME—Right to Convey to Home. Under subdivision 3, sec. 3, art. 1, of the Constitution of the United States, a resident of this state has a lawful right to order and receive a shipment of beer, by interstate commerce, from another state, and to convey the same, from the depot at which the shipment may arrive, in the original package to his home.

5. COMMERCE—Interstate—Control by State. The right of a citizen to carry on interstate commerce is conferred by the Constitution of the United States, and its exercise depends solely upon the will of the person engaged therein, and cannot be in advance controlled or limited by the state in any department of its govment.

6. INTOXICATING LIQUORS—Interstate Shipment—Delivery at Destination. The clause in section 1, art. 3, c. 69, p. 603, of the Session Laws of 1908, which reads, "or to have the possession of any such liquors with the intention of violating any of the provisions of this act," has no application to interstate shipments until there has been a delivery of an interstate shipment of said liquors at their destination.

7. SAME—Right to Convey to Home. Carrying or conveying intoxicating liquors from the railroad station to the home of the consignee is a part of the interstate commerce transportation, when they were shipped from another state, and is not a violation of the provisions of the prohibitory law of this state.

8. COMMERCE—Interstate— Regulation— Intoxicating Liquor. The states are not authorized to declare when interstate shipments of liquors shall become subject to state control. Congress has the exclusive power to fix the time when such shipments lose their interstate character and become subject to state control.

9. CONSTITUTIONAL LAW—Construction in Favor of Constitutionality. To justify a court in declaring an act of the Legislature void, it is not enough that the statute goes to the verge of

. constitutional power. It must appear clearly that it goes beyond the power. In case of doubt, the law must be sustained.

10. **STATUTES—Construction—Criminal Laws.** The operation and scope of criminal laws should not be enlarged by implication, but should be liberally construed; and, where there is any well-founded doubt as to any act being a public offense, especially when not malum in se, it should not be declared such.

11. **INTOXICATING LIQUOR—Interstate Shipment—Right to Deliver.** Where the undisputed facts are that the officer seized an interstate shipment when the same had been by a drayman taken from the depot and placed on his dray, it was an error for the court to refuse to give an instruction requested by the defendant, which is as follows: "Gentlemen of the jury, you are instructed in this case to return a verdict of not guilty, for the reason that the barrels in question were never delivered to the defendant, and for the reason that the shipment in question was and is protected by the interstate commerce clause of the Constitution of the United States until the same is delivered to the consignee, and the state authorities have no jurisdiction over the same at the time it was seized."

(Syllabus by the Court.)

*Error from Grady County Court; N. M. Williams, Judge.*

Josh McCord was convicted of having in his possession intoxicating liquor with intent to sell the same in violation of the prohibition law, and he brings error. Reversed and remanded, with directions.

The plaintiff in error, Josh McCord (hereinafter designated as defendant), was, at the May term, 1908, of the county court of Grady county, convicted on an information, the charging part of which reads as follows: "That at and within said county and state on the 16th day of April, 1908, Josh McCord then and there being, did then and there, wilfully, unlawfully have in his possession fermented liquors containing more than one-half of one per cent. alcohol, he, the said Josh McCord, having said fermented liquors in his possession with the intention of selling the same in violation of the provisions of the prohibition law, he, the said Josh McCord, not then and there being a state agent, or local agent, appointed for the purpose of dispensing liquors under such act, and he, the said Josh McCord, not then and there being a

druggist or a pharmacist authorized by law to keep such liquors for the purpose of compounding medicines, or any other person authorized by law to keep such liquors, contrary to. the form of the statute in such case made and provided, and against the peace and dignity of the state of Oklahoma. B. B. Barefoot, County Attorney"—which information was duly verified and filed in said county court on the 7th day of May, 1908.

Six witnesses testified on behalf of the prosecution, in substance, as follows: George A. Brown testified that he was deputy sheriff of Grady county; that on the 18th day of April, 1908, he was at the depot in Chickasha, and noticed five barrels of beer there, marked to J. C. McCord; "that in a short time Mr. Edwards, drayman of the town, came down and loaded them on his dray, and after he put them on his dray, I took possession of the five barrels of beer, and took from him. the bill of lading. I then had the drayman haul the five barrels to the courthouse and deposit them in the jail-yard." The seizure was made without any warrant or other process, said deputy sheriff asserting his right to make said seizure under the provisions of the prohibition law. W. L. Edwards, the second witness, testified that he was a drayman; that on the 16th day of April, 1908, Deputy Sheriff Brown took from his possession five barrels, and that he did not know whether it was beer or not; that he was sent by defendant, McCord, after this shipment, and was taking it to the home of said defendant, when Deputy Sheriff Brown. took possession of it, and caused him to take it to the court house. George Ferman, the third witness, testified that on the 16th day of April, 1908, he was agent for the Rock . Island Railway at Chickasha. Identified the freight bill as issued by him, as follows:

Exhibit A.

Freight Bill.
Consignee, Jack McCord,

Chickasha Station, 4—14—1908.
To Chicago, Rock Island & Pacific Railway Company, Dr.
·For charges on articles waybilled from Fort Worth.

| Date of Waybill | No. of Packages | Articles and Marks. | Weight |
|---|---|---|---|
| 4—11, 1908. | 5 Casks Beer | 1250 | Paid. |

Consignor, National Liquor Co.  ı
George Ferman, Agent.

He said he had had 21 years' experience railroading, and that the purpose of the freight bill was to show the consignee, and where the goods were from, the date of entry, and the goods shipped; that the freight bill was turned over to the person who delivers the freight, this being the bill secured by Deputy Sheriff Brown from the drayman, Edwards. M. B. Louthan testified that he was sheriff of Grady county, that he had known defendant three or four years, and that he thought his initials were "J. C." He further testified that there had been a state dispensary agent appointed at Chickasha, and that he was not Josh McCord, the defendant, and that defendant was not a pharmacist. Dr. Martin Correl and Mrs. Rogers were also called on behalf of the prosecution, but their testimony is not material to any issue in this case.

The defendant requested the following instructions, which were refused by the court:

"(1) Gentlemen of the jury, in this case the state has failed to introduce any testimony in this case to prove the crime charged in the information, and your verdict will be a verdict of not guilty. (2) Gentlemen of the jury, you are instructed in this case to return a verdict of not guilty, for the reason that the barrels in question were never delivered to the defendant, and for the reason that the shipment in question was and is protected by the interstate commerce clause of the Constitution of the United States until the same is delivered to the consignee, and the state authorities have no jurisdiction over the same at the time it was seized."

To which ruling of the court in refusing to give said instructions, and each of them, the defendant at the time excepted.

The jury returned a verdict of guilty, and defendant filed his motion for a new trial, which motion was, on the 12th day of

March, 1908, by the court overruled, whereupon the court proceeded to pass sentence upon the defendant, and fined him $300 and 60 days in jail. The defendant excepted, and on the same day filed his notice of appeal on William Bondurant, clerk of the county court, and B. B. Barefoot, county attorney of Grady county. On November 20, 1908, defendant filed in the office of the clerk of the Criminal Court of Appeals his petition in error and case-made. At the March term, 1909, of this court said cause was submitted, and is now before this court for review.

*F. E. Riddle,* for plaintiff in error.—On question of right to receive interstate shipment: 7 Cyc. 437-439; *State v. Stilling,* 53 N. J. L. 517; *Jervey v. Carolina,* 66 Fed. 1013; *Bowman v. R. R. Co.,* 125 U. S. 465.

*Fred S. Caldwell,* for the State.

No brief for the State reached the reporter.

DOYLE, JUDGE. (after stating the facts as above). The testimony showed that the five barrels containing beer were shipped from Ft. Worth, Tex., to the defendant at Chickasha, Okla. The transaction was therefore one of interstate commerce, and within the exclusive jurisdiction of Congress. We believe the instructions requested by the defendant and refused by the court should have been given, for the reasons set forth in the second instruction requested; the first, as a peremptory instruction, directing a verdict of acquittal, because on the undisputed facts, as a matter of law, the evidence was insufficient to show the commission of the offense charged.

This prosecution was had under that clause of section 1, art. 3, c. 69, p. 603, Sess. Laws 1908, commonly called the "Enforcement Act," which is a part of the prohibition law, and which reads: "Or to have the possession of any such liquors with the intention of violating any of the provisions of this act." Counsel for the state contends that the clause contemplates interstate shipments upon their arrival at the depot, and before the same have reached their destination at the home of the consignee, and that

this provision of the prohibition law is a proper exercise of the police power of the state in regard to interstate shipments.

This leaves for our determination as to the questions involved: First. Has the state, in the exercise of its police power, the right to enact a law which abrogates, abridges, or diminishes the constitutional right to ship intoxicating liquors from another state into this state, and to receive the same at their destination? Second. Does the so-called "Enforcement Act" contemplate and abrogate or abridge the right to receive interstate shipments of intoxicating liquors?

Article 14 of the Constitution of the United States declares that:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

And subdivision 3, § 8, art. 1, declares:

"The Congress shall have power to regulate commerce with foreign nations and among the several states and with Indian Tribes."

The power of Congress under this commerce clause of the Constitution to regulate interstate and foreign commerce, is limited only by the other provisions of the Constitution. Under the police power, which is inherent in every state for the protection of the public safety, public health, and public morals of the community, the power to determine what is injurious to the public safety, public health, and public morals must be determined by the lawmaking power, but there are limits beyond which Legislatures cannot rightfully go.

In determining those questions it becomes necessary to inquire whether there was any conflict between the exercise by Congress of its power to regulate commerce between the states and the exercise by the state of what is termed its "police power," in passing the law in question. It has been well said by Mr. Justice

Harlan, in *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, that:

"Courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed are under a solemn duty—to look at the substance of things, whenever they enter upon an inquiry whether the Legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

See, also, *Ohio Oil Co. v. Indiana,* 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729; *Reid v. Colorado,* 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; *Jacobson v. Massachusetts,* 197 U. S. 11, 25 Sup Ct. 358, 49 L. Ed. 643.

In *Cunnius v. Reading School District,* 198 U. S. 458. 25 Sup. Ct. 721, 49 L. Ed. 1125, the court, in speaking of the effect of the fourteenth amendment on the police power of the state, said:

"That the amendment does not deprive the states of their police power over subjects within their jurisdiction is elementary. The question, then, is not the wisdom of the statute, but whether it was so beyond the scope of municipal government as to amount to a want of due process of law."

In *Otis v. Parker,* 187 U. S. 606, 23 Sup. Ct. 168, 47 L. Ed. 323, Justice Holmes, delivering the opinion of the court, in part says:

"It is true, no doubt, that neither a state Legislature nor a state Constitution can interfere arbitrarily with private business or transactions, and that the mere fact that an enactment purports to be for the protection of public safety, health, or morals is not conclusive upon the courts. *Mugler v. Kansas, supra; Lawton v. Steel,* 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385. But general propositions do not carry us far. While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon

conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view, as well as for possible peculiar conditions which this court can know but imperfectly, if at all."

In *Rahrer's Case,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, the Chief Justice, speaking for the court, said:

"The power of the state to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order, and prosperity is a power originally and always belonging to the states, not surrendered by them to the general government, nor directly restrained by the Constitution of the United States, and essentially exclusive; and this court has uniformly recognized state legislation, legitimately for police purposes, as not, in the sense of the Constitution necessarily infringing upon any right which has been confined, expressly or by implication, to the national government."

In *Austin v. Tennessee,* 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224, Mr. Justice Brown, in speaking of the police powers of the state, said:

"We have had repeated occasion to hold, where state legislation has been attacked as violative either of the power of Congress over interstate commerce, or of the fourteenth amendment to the Constitution, that if the action of the state Legislature were as a *bona fide* exercise of its police power, and dictated by a genuine regard for the preservation of the public health or safety, such legislation would be respected, though it might interfere indirectly with interstate commerce."

The rights of the states under the police power to regulate, restrain, forbid the use, sale, and keeping of intoxicating liquors within their own boundaries has been fully established by a long line of decisions of the Supreme Court of the United States. *Boston Beer Co. v. Massachusetts,* 97 U. S. 25, 24 L. Ed. 989; *Foster v. Kansas,* 112 U. S. 201, 5 Sup. Ct. 8, 97, 28 L. Ed. 629; *Crowley v. Christensen,* 137 U. S. 91, 11 Sup. Ct. 13, 34 L. Ed. 620. The decisions of the same court have declared that sealed packages as interstate shipments are not within the police power. In *Bowman v. Chicago & N. W. Ry. Co.,* 125 U. S. 507, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700, the Supreme Court held:

"The statute of the state of Iowa, forbidding, under penalty, common carriers, their agents, or any person, to bring liquors into the·state unless previously furnished with a certificate from the county auditor that the consignee was authorized to sell the same, was void, as a regulation of interstate commerce."

In the case of *Hall v. De Cuir*, 95 U. S. 485, 24 L. Ed. 547, the court said:

"But we think it may safely be said that state legislation, which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress."

In *Leisy v. Hardin*, 135 U. S. 100, 124, 10 Sup. Ct. 681, 689, 34 L. Ed. 128, it was held that the right to sell the imported merchandise in the original package, free from interference by state laws, was protected by the Constitution of the United States. Summing up its conclusions, the court said:

"Plaintiffs in error are citizens of Illinois; are not pharmacists; have no permit to import into Iowa beer, which they sell in original packages, as described. Under our decision in *Bowman v. Chicago & N. W. Ry., supra,* they had the right to import this beer into the state; and, in the view which we have expressed, they had the right to sell, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time we held that, in the absence of congressional permission to do so, the state had no power to interfere by seizure, nor any other action, in prohibition of the importation and sale by the foreign or nonresident importer."

This decision was met by Congress promptly in passing the so-called "Wilson Act" on August 8, 1890. Act Aug. 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177).

The Wilson Act reads as follows:

"An act to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases.

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as

though such liquors or liquids had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." ·

This law was approved as valid in the case of *Wilkinson v. Rahrer*, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, and a provision of the Constitution of Kansas which provided that the manufacture and sale of intoxicating liquors shall be forever prohibited in that state, except for medicinal, scientific, and mechanical purposes, and an act passed in enforcement thereof, making penal the manufacture, sale, or barter of any spirituous, malt, vinous, fermented, or other intoxicating liquors were held to be efficacious and that imported liquors or liquids shall, upon arrival in the state, fall within the category of domestic articles of a similar nature.

Subsequently, in the case of *Scott v. Donald*, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632, construing the so-called dispensary act of the state of South Carolina, Mr. Justice Shiras, who delivered the opinion of the court, in part says:

"It is important to observe that the statute before us does not purport to prohibit either the importation, the manufacture, the sale, or the use, of intoxicating liquors. The first section does, indeed, make it penal to manufacture, sell, barter, deliver, store, or keep in possession any spirituous, malt, vinous, fermented, brewed or other liquors which contain alcohol and are used as a beverage, and declares all such liquors to be contraband, and against the morals, good health, and safety of the state, and authorizes them to be seized wherever found, without warrant, and turned over to the state commissioner, yet those enactments are not absolute, but are made subject to the subsequent provisions of the act. When those subsequent provisions are examined, we find that, so far from the importation, manufacture, and sale of such liquors being prohibited, those operations are turned over to state functionaries, by whom alone, or under whose direction, they are to be carried on."

After reviewing the· leading cases, the opinion concludes as follows:

"In the light of these cases the act of South Carolina of January 2, 1895, must, as to those of its provisions which affect

the plaintiff in the present suits, stand condemned. It is not an inspection law. The prohibition of the importation of wines and liquors of other states by citizens of South Carolina for their own use is made absolute, and does not depend upon the purity or impurity of the articles. Only the state functionaries are permitted to import into the state, and thus those citizens who wish to use foreign wines and liquors are deprived of the exercise of their own judgment and taste in the selection of commodities. To empower a state chemist to pass upon what the law calls the 'alcoholic purity' of such importations by chemical analysis can scarcely come within any definition of a reasonable inspection law. It is not a law purporting to forbid the importation, manufacture, sale, and use of intoxicating liquors as articles detrimental to the welfare of the state and to the health of the inhabitants, and hence it is not within the scope and operation of the act of Congress of August, 1890. That law was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subject of legitimate commerce. When that law provided that 'all fermented, distilled, or intoxicating liquors transported into any state or territory, remaining therein for use, consumption, sale, or storage therein, should upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the state cannot, under the congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

In the case of *Vance v. W. A. Vandercook Co.*, 170 U. S.

439, 18 Sup. Ct. 674, 42 L. Ed. 1100, Mr. Justice White, delivering the opinion of the court, in part says:

"(a) Beyond dispute the respective states have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the states, provided always they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided, further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other states of the Union.

"(b) Equally well established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States. * * *

"The scope and effect of this act of Congress have been settled. *Wilkinson v. Rahrer, supra;· Rhodes v. State of Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. * * *

"In the first of these cases the constitutional power of Congress to pass the enactment in question was upheld, and the purpose of Congress in adopting it was declared to have been to allow state laws to operate on liquor shipped into one state from another, so as to prevent the sale in the original package in violation of state laws. In the second case the same view was taken of the statute; and, although it was decided that the power of the state did not attach to the intoxicating liquor when in course of transit, and until receipt and delivery, it was yet reiterated that the obvious and plain meaning of the act of Congress was to allow the state laws to attach to intoxicating liquors received by interstate commerce shipments before sale in the original package, and therefore at such a time as to prevent such a sale, if made unlawful by the state law. * * *

"It is argued that the foregoing considerations are inapplicable, since the state law now before us, whilst it recognizes the right of residents of other states to ship liquor into South Carolina for the use of residents therein, attaches to the exercise of that right such restrictions as to virtually destroy it. But the right of persons in one state to ship liquor into another state

to a resident for his own use is derived from the Constitution of the United States, and does not rest on the grant of the state law. Either the conditions attached by the state law unlawfully restrain the right, or they do not. If they do—and we shall hereafter examine this contention—then they are void. If they do not, then there is no lawful ground of complaint on the subject. We are thus brought to examine whether the regulations, imposed by the state law upon the right of residents of other states to ship into the state of South Carolina alcoholic liquors to the residents of that state when ordered by them for their use, are so onerous and burdensome in their nature as to substantially impair the right; that is, whether they so hamper and restrict the exercise of the right as to materially interfere with, or in effect prevent, its enjoyment. * * *

"The regulation, then, compels the resident of the state who desires to order for his own use to first communicate his purpose to the state chemist. It, moreover, deprives any nonresident of the right to ship by means of interstate commerce any liquor into South Carolina unless previous authority is obtained from the officers of the state of South Carolina. On the face of these regulations, it is clear that they subject the constitutional right of the nonresident to ship into the state, and of the resident in the state to receive for his own use, to conditions which are wholly incompatible with, and repugnant to, the existence of the right which the statute itself acknowledges. The right of the citizen of another state to avail himself of interstate commerce cannot be held to be subject to the issuing of a certificate by an officer of the state of South Carolina, without admitting the power of that officer to control the exercise of the right. But the right arises from the Constitution of the United States; it exists wholly independent of the will of either the lawmaking or executive power of the state; it takes its origin outside of the state of South Carolina, and finds its support in the Constitution of the United States. Whether or not it may be exercised depends solely upon the will of the person making the shipment, and cannot be in advance controlled or limited by the action of the state in any department of its government."

In the case of *Adams Express Co. v. Kentucky,* 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987, Mr. Justice Brewer, expressing the opinion of the court, in part says:

"But that the agent consented to hold the whisky until Sat-

urday did not destroy the character of the transaction as one of interstate commerce is settled by the recent case of *Heymand v. Southern R. Co.*, 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178. In that case the whisky had been forwarded to a party in Charleston, S. C., and, after its arrival at Charleston was placed in the warehouse of the railroad company by its agent, and there seized by constables, asserting their right so to do under the dispensary law of South Carolina. The point was made, and sustained by the Supreme Court of the state of Georgia, in which state an action had been brought against the company for the value of the goods, that when the goods were placed in the warehouse, the carrier was thenceforward liable only as a warehouseman. In passing upon this contention we said:

" 'As the general principle is that goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package, and as the settled rule is that the Wilson law was not an abdication of the power of Congress to regulate interstate commerce, since that law simply affects an incident of such commerce by allowing the state power to attach after delivery and before sale, we are not concerned with whether, under the law of any particular state the liability of a railroad company as carrier ceases and becomes that of a warehouseman, on the goods reaching their ultimate destination, before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier. For, whatever may be the divergent legal rules in the several states concerning the precise time when the liability of the carrier as such in respect to the carriage of the goods ends, they cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and thereby comes under the control of the state authority. * * * Much as we sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a state, we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce.' "

The questions arising in this case are answered in the opinions above quoted. Congress, in the exercise of its exclusive power, enacted the so-called "Wilson Act." The proper construction and application of this act of Congress has been settled by the Supreme Court of the United States; and, as this is a federal ques-

.tion, this court is concluded ·by the decisions of the Supreme Court of the United States. That court, in the cases quoted, has declared that the states are not authorized to determine when interstate shipments shall become subject to state control, and that the states cannot in any manner by legislation change the effect of the act of Congress. Congress may at any time abrogate, change, or modify the provisions of this so-called "Wilson Act." The last Congress passed an act supplemental to it, but subsequent to the time of this alleged offense. This legislation is in the exercise of the constitutional power conferred by the commerce clause of the Constitution. Under these adjudications the time when such shipments lose their interstate commerce character has been fixed as at the time when such shipments reach their destination at the home or storeroom of the consignee. Upon that event, they then become subject to the jurisdiction of the state.

In the foregoing opinions upon the effect of the so-called "Wilson Act," although they do not decide clearly, they imply that, if a state should prohibit the manufacture, possession, sale, and use·of intoxicating liquors, both domestic and imported, within the state, without exception, then, under those conditions, the effect of this act of Congress would permit the state to assume jurisdiction upon all imported liquors upon their arrival within the jurisdiction of the state; and the state, in the exercise of its police power, could exclude all such liquors as injurious to the public health, the public morals, and the public safety of its inhabitants. In the case of *Scott v. Donald,* Justice Shiras said: "Such law may forbid entirely the manufacture and sale of intoxicating liquors and be valid." This would be within the letter and spirit of said act of Congress. The prohibition law of the state of Oklahoma does not go that far.

That the traffic in liquor is not illegal or immoral *per se* must be admitted. It is recognized in the prohibition requirement of the Enabling Act, and in the prohibition ordinance of the Oklahoma Constitution conforming to said requirement. The prohibition law of Oklahoma (chapter 69, p. 594, Sess. Laws

1908), being an act entitled "An act to establish a state agency. and local agencies for the sale of intoxicating liquors for certain purposes; and providing for referring the same to the people; prohibiting the manufacture, sale, barter, giving away or otherwise furnishing of intoxicating liquors, except as herein provided; providing for the appointment of an attorney and for the enforcement of the provisions of this act; making an appropriation and declaring an emergency"—does prohibit the manufacture, but does not purport to prohibit the importation, sale, or use of intoxicating liquors. Article 1 provides for a state superintendent, and local agents, and for a state agency and one local agency in each incorporated town of 2,000 population or more, and in each county having no such incorporated town. Article 2 provides the rules for conducting such agencies, and the conditions under which said liquors may be sold. Article 3 makes it unlawful to make intrastate shipments, to sell, barter, give away, or otherwise furnish, "except as in this act provided," and provides for the enforcement of said law.

It will be perceived by the provisions of said prohibition law, so far as the importation and sale of intoxicating liquors being prohibited, those operations are turned over to certain state officials, by whom alone, or under whose direction, they are to be carried on. Under this recognition of the right to use intoxicating liquors a resident of this state has a constitutional right to have shipped to him from another state intoxicating liquors when ordered by him for his individual use, or for use of his immediate family, and to keep the same for such use, and the state cannot, in the exercise of its police power, enact laws that will deny, diminish, or substantially burden or hamper such constitutional right to have such shipments made, and to receive and retain the same for such use. To what purpose would the right to receive such a shipment at the railroad depot, or the express office, be without the right to remove it to the home or storeroom of the consignee? Shall this right cease at the point when its continu-

·ance is indispensable to its value, when personal use is the object of the importation? We cannot believe that it does.

The sixth article of the Constitution of the United States declares that:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

And section 1, art. 1 of the Oklahoma Constitution properly declares that: "The Constitution of the United States is the supreme law of the land." The language of this article and the aforesaid section is direct and certain, and the adjudications of the United States Supreme Court on this question are conclusive on the state courts.

It is a fundamental rule that legislative acts shall not be declared void by the courts if by any reasonable construction thereof such result can be avoided. If by limitation upon its general terms the same can be fairly construed, and so applied as to bring the statute within the Constitution, and thus save it from being in conflict therewith, such limitation and construction should be adopted. The evident and obvious purpose of our prohibition law was the regulation of the traffic in intoxicating liquors, and to prohibit the sale thereof in this state as a beverage. There is no apparent purpose on the part of the lawmaking power to undertake the regulation of interstate commerce. The language of the law may be broad, but it is nevertheless subject to the limitation imposed upon the police power of the state by the provisions of the federal Constitution. It cannot be said from the language used that it was the intention of the Legislature to pass an act to affect said liquors before the same came under the jurisdiction of the state. The purpose of the act is to control all intoxicating liquors within the jurisdiction of the state. The act does not in express terms forbid interstate shipments, and a reference to the

provisions of the act clearly shows that the right to receive interstate shipments is therein recognized.

Sections 18, 19a, and 20, art. 3, read as follows:

"Section 18. It shall be unlawful for any person to whom any liquors the sale of which is prohibited by this act, shall be consigned whether consigned to him in his own name or in a fictitious name, to give any other person an order for any of said liquors to any railroad company, express company, or other common carrier, or to any officer, agent or employe of any railroad company, express company or other common carrier, with the intent and for the purpose to enable such other person to get and receive any such liquor for himself or for any other person or persons other than the consignee. Any person violating the provisions of this section shall be guilty of a misdemeanor.

"Sec. 19a. Any officer, agent or employe of the railroad company, express company or other common carrier, who shall knowingly carry or deliver any liquors, the sale of which is prohibited by this act, to or for any person to be sold, bartered, given away or otherwise furnished in violation of this act shall be guilty of a misdemeanor. Any such officer, agent or employe who shall knowingly deliver any such liquors to any person other than the person to whom it is consigned and without a written order in each instance of the consignee thereof shall be guilty of a misdemeanor.

"Sec. 20. It shall be unlawful for any railroad or other common carrier, or agent thereof, or any other person, individual or corporate, to ship, receive, transport, carry, handle or deliver any liquors the sale of which is prohibited by this act under a false or fictitious name, or title; and any person who shall knowingly violate any provision of this section shall be deemed guilty of a misdemeanor, and all liquors shipped under any such fictitious name or title, or to a fictitious person, shall be forfeited to the state."

The evident purpose of these, the only provisions of said act that can be said to relate to interstate shipments, is to prevent the abuse of this right. This we believe to be the proper construction and application of these provisions, and the correct conclusion is that said prohibition law, as enacted, does not contravene the Constitution of the United States.

The contention of counsel for the state that the Legislature, in effect, intended and attempted to make this law applicable to in-

terstate shipments before the same reached their destination and became subject to state jurisdiction, and that the law by implication, as no exceptions are expressed, covers interstate shipments upon their arrival at the depot of the common carrier, is without merit, and is not well taken. The error of his argument is so self-evident as to require only a passing notice. The language of the foregoing sections quoted completely answers his contention. The operation and scope of criminal laws should not be enlarged by implication, but they should be liberally construed; and, where there is well-founded doubt as to any act being a public offense, especially one not *malum in se,* it should not be declared such, but should rather be construed in favor of the liberty of the citizen.

We are constrained to hold that the jurisdiction of the state does not take effect until said shipments reach their destination at the home or place of storage of the consignee. Then, but not until then, can the state test the question of unlawful possession; and in this case the constructive possession of the defendant of the liquors in question was not a violation of any of the provisions of the prohibition law. The Supreme Court of this state has passed upon this question in the case of *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804. The syllabus reads as follows: Syllabus by the Supreme Court:

"Under subdivision 3, § 8, art. 1, of the Constitution of the United States, commonly referred to as the 'interstate commerce clause' of the Constitution, a resident of one state has the right to have shipped to him from another state alcoholic liquors, when ordered by him for his and his family's use, and to keep the same for such use; and the state cannot under its police power enact laws so as to substantially hamper or burden such constitutional right to have such shipments made, and to receive and retain the same for personal use."

This court passed upon a similar question at this term in the case of *Webb High et al v. State. ante,* p 161, 101 Pac. 115, and *Houston Hudson v. State, ante,* p. 176, 101 Pac. 275.

We have given the questions involved in this case the most careful consideration, and we have reluctantly reached the conclusion arrived at. However, this court is concluded by the construc-

tion placed by the Supreme Court upon the provisions of the Wilson act. Holding otherwise would simply mean that the federal courts would be appealed to, for the release of persons so convicted, by writs of *habeas corpus*, and by damage suits against the bonded peace officers of the state, for unconstitutional seizures so made. The Supreme Court of the United States has said that the question whether a given state law is lawful exercise of the police power is still open, and must remain open, to that court. As the prohibition law of this state possesses original features, and differs in many ways from the legislation by other states on the subject, the public interest demands that the federal questions arising in connection with said law should be settled by a direct appeal to that tribunal, which is the final arbiter of all questions arising under the Constitution of the United States.

For the reasons hereinbefore stated, we are of the opinion: First, that this state in the exercise of its police power has not the right to enact a law which abrogates, abridges, or diminishes the constitutional right of any resident of this state, who may elect to order for his own use intoxicating liquors from another state, to so order, ship, and receive the same at their destination; second, that the so-called "Enforcement Act" article of the prohibition law does not, by express language or by implication, abrogate or abridge the right to so order and receive interstate shipments of intoxicating liquors.

For the reasons hereinbefore stated, the judgment is reversed and remanded, with directions to the county court of Grady county to dismiss the case.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.