STATE v. C. E. HASKELL.

October Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS,JJ.

Opinion filed May 8, 1911.

*Constitutional Law—Police Power—Scope and Determination—*
*Protection of Fish—Depositing Sawdust in River—Statutes*
*—Interpretation—Discrimination—Judicial Notice.*

The legislative exercise of the police power must be reasonable, and whether
it is reasonable in a particular instance is a question ultimately for the
court.

It is the duty of the court in construing a statute to ascertain and fulfil
the intention of the Legislature as gathered from the statute taken
as a whole, and from its application to existing circumstances and
necessities.

Judicial notice is taken that the Lamoille river is one of the larger rivers
of the State and has many tributaries above Cady's Falls in Morris-
town, to which tributaries trout in the river are accustomed to resort
to spawn and feed; that the river is their common passageway to and
from such spawning and feeding grounds; and that the mischief sought
to be remedied by No. 211, Acts 1908, prohibiting the depositing
of sawdust, shavings or mill refuse in the waters of the Lamoille river or
its tributaries above a designated place, is the injury to, and destruc-
tion of, fish in the river and its tributaries consequent on such deposit.

By the common law, fish, being *feræ naturæ*, are the general property of
the people of the State in their united sovereignty, and the owner of
the soil, through which flows a non-boatable stream of water containing
fish, has only the exclusive right of fishing therein within the boundaries
of his own territory; the fish in the stream are not his, and his right
of property attaches only to the fish that he reduces to his actual pos-
session, and he has no right to kill, or materially injure, or obstruct
the free passage of, those he does not take.

At common law the police power in reference to the protection of fish and
game fit for food arises from the duty of the State to preserve for its
people a valuable food supply.

No. 211, Acts 1908, making it an offence for an owner or operator of a mill
to deposit or suffer to be deposited any sawdust, shavings or mill refuse
in the waters of the Lamoille river or its tributaries above a designated
place, is a proper and reasonable exercise of the State's police power
for the preservation of the fish in the river.

Whether depositing sawdust, shavings, or mill refuse in the waters of the Lamoille river above the place designated is or may be so injurious or destructive of fish as to require for their protection the prohibition of such deposits is a question of fact and of public policy for the Legislature to determine, and, unless it appears on the face of the statute, or from facts of which the court must take judicial notice, that it is an infringement of constitutional rights, that determination is conclusive upon the court in disposing of a demurrer to a complaint charging the prohibited depositing.

No. 211, Acts 1908,making it an offence for an owner or operator of a mill to deposit or suffer to be deposited any sawdust, shavings, or mill refuse in the waters of the Lamoille river or its tributaries above a designated place, is not unconstitutional as discriminating against persons owning certain kinds of property without regard to its location, as it only applies to owners and operators of mills, and so is based on a proper and reasonable classification.

On demurrer to an information charging respondent, as an operator of a mill and not as owner, with depositing sawdust, shavings, and mill. refuse in the waters of the Lamoille river in violation of No. 211, Acts 1908, respondent is not entitled to object that the statute unjustly discriminates against mill owners, in that a mill owner is thereby made liable for depositing sawdust and shavings in the river, though his mill is located at a point remote from the river and the sawdust and shavings that he deposits in the river never had any relation to his mill, for respondent is not affected by that discrimination, if it exists.

INFORMATION for depositing sawdust, shavings, and mill refuse in the waters of the Lamoille river, in violation of No. 211, Acts 1908. Heard on demurrer to the information, at the June Term, 1910, Lamoille County, *Butler*, J., presiding. Demurrer overruled, *pro forma*, and the information adjudged sufficient. The respondent excepted. The opinion states the case.

*R. W. Hulburd* for the respondent.

*M. P. Maurice, State's Attorney*, for the State.

WATSON, J.   This case is here on demurrer to the complaint charging that the respondent at Wolcott (the alleged place of his residence) in the county of Lamoille, on the 14th day of March, 1910, he then and there being the operator of a mill, did by himself and his agents, deposit and suffer to be deposited,

sawdust, shavings, and mill refuse, in the waters of the Lamoille river above Cady's Falls in the town of Morristown in said county, contrary to the form of the statute, etc. All of the counts are the same except that each charges the offence on a different date.

The complaint is based upon No. 211, of the Laws of 1908, entitled "An act relating to the pollution of the waters of the Lamoille River". Section one reads: "An owner or operator of a mill, who, by himself, or agents, deposits or suffers to be deposited, any sawdust, shavings or mill refuse in the waters of the Lamoille river or in its tributaries above Cady's Falls in the town of Morristown, shall be fined not less than twenty dollars nor more than one hundred dollars, for each offence."

The respondent contends that no crime is charged in the complaint, because (he says) the statute is partial, unreasonable, and discriminates against citizens owning certain kinds of property, without regard to its location, and hence it is in contravention of the 14th amendment of the Constitution of the United States, and of articles 1 and 7 of the Constitution of the State.

The legislative exercise of the police power must be reasonable, and whether it is reasonable in the particular instance is a question ultimately for the court. *State* v. *Speyer*, 67 Vt. 502, 32 Atl. 476, 29 L. R. A. 573; *State* v. *Dodge*,76 Vt. 197, 56 Atl. 983. Other than as appears from the title, the act contains nothing showing the real purpose or policy of the enactment; and the title is not very significant in that respect, for it is without anything indicating the mischief intended to be remedied: whether the inhibition is for the protection of the public in the use of the water for domestic purposes, or in the preservation of the fish therein. However, some things are judicially known by the Court. In *Heyden's Case*, 3 Co. Rep. 7a, 14 Eng. Rul. Cas. 816, decided in 1584, it was resolved by the Barons of the Exchequer, that for the sure and true interpretation of all statutes in general four things are to be discerned and considered: "1st. What was the common law before the making of the act. 2nd. What was the mischief and defect for which the common law did not provide. 3rd. What remedy the Parliament hath resolved and appointed to cure the disease

of the commonwealth. And 4th. The true reason of the remedy." And in *Bruce (Lord Henry)* v. *Ailesbury (Marquiss of)*, 1892, A. C. 357, 14 Eng. Rul. Cas. 822, where the act of Parliament itself contained nothing, by way of recital or preamble, to show what the meaning or policy of the statute was, Lord Chancellor Halsbury, referring to the resolves in Heyden's case, said, "it has been a very familiar canon of construction to contemplate what was the cause and reason of the act, or, in other words, the mischief requiring the remedy." In *The Church of the Holy Trinity* v. *United States*, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226, it is said that "Another guide to the meaning of a statute is found in the evil which it is designed to remedy; and for this the court properly looks at contemporaneous events, the situation as it existed, and as it was pressed upon the attention of the legislative body." The same rule was declared and applied by this Court in *Legg* v. *Britton*, 64 Vt. 652, 24 Atl. 1016. The case was heard on demurrer to the replication to the plea in bar. The Court said that in giving construction to the statute in question it was the duty of the Court to ascertain and carry into effect the intention of the Legislature, to be ascertained, first, from the language of the act taken as a whole; and secondly, from its application to existing circumstances and necessities. This case was followed by *Re National Guard of Vermont*, 71 Vt. 493, 45 Atl. 1051. See also *State* v. *Audette*, 81 Vt. 400, 70 Atl. 833, 18 L. R. A. (N. S.) 527, 130 Am. St. Rep. 1061; *Bacon* v. *Boston & Maine R. R.*, 83 Vt. 421, 76 Atl. 128. Applying this rule of construction, the Court will take judicial notice that the Lamoille river is one of the larger rivers of the State and has many tributaries above Cady's Falls in Morristown, to which tributaries trout in the river are accustomed to resort for spawning and for feeding purposes, and that the river is their common passageway to and from such spawning and feeding grounds; and that the mischief sought to be remedied by the law in question is the injury to, and the destruction of, fish in the river and its tributaries, consequent on the depositing of sawdust, shavings, and mill refuse in the waters thereof above the point mentioned in the act. See *People* v. *Truckee Lumber Co.*, 116 Cal. 397, 48 Pac. 374, 58 Am. St. Rep. 183, 39 L. R. A. 581; *Winnipiseogee*

*Lake Co.* v. *Young,* 40 N. H. 420; *Ingram* v. *Colgan,* 106 Cal.
113, 38 Pac. 315, 39 Pac. 437, 28 L. R. A. 187, 46 Am. St. Rep. 221.

By the common law, fish, being *ferae naturae,* are the general
property of the people of the State, in their united sovereignty.
The owner of the soil through which a stream of water, not
boatable within the meaning of Ch. II, §40, of our Constitution,
(*New England Trout & Salmon Club* v. *Mather,* 68 Vt. 338,
35 Atl. 323, 33 L. R. A. 569), flows, has but a qualified or special
right of property in the fish therein, that is, the exclusive right
of fishing within the boundaries of his own territory. The fish
in the stream, however, are not his. His right of property at-
taches only to those he reduces to actual possession. He cannot
lawfully kill, materially injure, or obstruct the free passage of,
those which he does not take. *State* v. *Theriault,* 70 Vt. 617,
41 Atl. 1030, 67 Am. St. Rep. 695, 43 L. R. A. 290; *Payne* v.
*Sheets,* 75 Vt. 335, 55 Atl. 656; *State* v. *Niles,* 78 Vt. 266, 62
Atl. 795, 112 Am. St. Rep. 917; *Zanetta* v. *Bolles,* 80 Vt. 345,
67 Atl. 818. It is said in the Theriault case that such owner of
the land does not own the flowing water and only has the right
properly to use it while on its passage; that he can use it in a
reasonable manner for domestic purposes, for creating power,
and for taking fish therefrom; that he cannot divert it from
its course, nor pollute it, but leave it so the landowners on the
stream above and below may enjoy a like use of the water,
including taking fish therefrom; and that this right carries with
it the common right to have fish inhabit and spawn in the stream,
for which purpose they must have a common passageway to
and from their spawning and feeding grounds. It follows
that the right to have fish, migratory in nature, pass up and
down such a stream to and from their breeding or feeding grounds
is a public right which may be regulated and protected by the
State. And to the extent that the waters of this State are
common passage ways for fish they are, for this purpose, of a
public character and subject to legislative control. *State* v.
*Roberts,* 59 N. H. 256, 47 Am. Rep. 199; *State* v. *Roberts,* 59
N. H. 484; *Cottrill* v. *Myrick,* 12 Me. 222; *People* v. *Truckee
Lumber Co.,* cited above. See also *Commonwealth* v. *Chapin,*
5 Pick, 199, 16 Am. Dec. 386; *Holyoke Water Power Co.* v.
*Lyman,* 15 Wall. 500, 21 L. Ed. 133.

At common law the police power as to the protection of fish and game, that is, wild animals fit for food,—not including noxious wild animals not fit for food and worthless in the eye of the common law: *Payne* v. *Sheets*, cited above; *Aldrich* v. *Wright*, 53 N. H. 398, 16 Am. Rep. 339, 363; *Ingram* v. *Colgan*, cited above,—has its source in the duty of the state to preserve for its people a valuable food supply. *Geer* v. *Connecticut*, 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. 600. And in the Theriault case it is said that by our organic law, "the State, the representative of the people, the common owner of all things *ferae naturae,* not only has the right, but is under a duty, to preserve and increase such common property." The interests of the public generally demand, therefore, that the waters of the river and tributaries in question be not polluted by the deposit of foreign substances therein to the material injury or the destruction of the fish, young and mature, there habitat; and to prevent such pollution the State may, within constitutional limits, adopt such measures as in its discretion may be necessary in the interests of the public. In *Lawton* v. *Steele*, 152 U. S. 133, 38 L. Ed. 385, 14 Sup. Ct. 499, a case involving the constitutionality of a statute in New York for the preservation of fish in the waters of that state, the Court, speaking through Mr. Justice Brown, said the preservation of fish and game had always been treated as within the proper domain of the police power. "The state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the Legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests". And in a later case that Court, by the same Justice, stated, as a general rule, "that whatever is contrary to public policy or inimical to the public interests is subject to the police power of the state, and within legislative control, and in the exertion of such power the Legislature is vested with a large discretion, which, if exercised *bona fide* for the protection of the public, is beyond the reach of judicial inquiry." *Louisville & Nashville R. Co.* v. *Kentucky,* 161 U. S. 677, 40 L. Ed. 849, 16 Sup. Ct. 714.

Whether the depositing of sawdust, shavings, and mill refuse in the waters of the river named and its tributaries above

the place specified in the act is or may be so injurious to, or destructive of, fish, as to require for their protection and preservation in the interests of the public welfare, the inhibition of such deposits, is a question of fact and of public policy which belongs to the Legislature to determine, and unless something appears on the face of the statute, or from some facts of which the Court must take judicial notice, that it is an infringement upon constitutional rights,—which there does not,—such determination by the Legislature is conclusive upon us in disposing of this case upon the demurrer. It will be seen that in one or more of the cases to which we call attention, the court went to the extent of holding that in the trial upon the merits evidence is not admissible for the purpose of showing the statute challenged to be unconstitutional, as not a lawful exercise of the police power; but we do not go beyond the requirements of the case in hand standing upon demurrer. In *Powell* v. *Pennsylvania*, 127 U. S. 678, 32 L. Ed. 253, 8 Sup. Ct. 992, the writ of error brought up for review a judgment of the supreme court of Pennsylvania, sustaining the validity of a statute of that state relating to the manufacture and sale of oleomargarine, entitled "An act for the Protection of the Public Health and to Prevent Adulteration of Dairy Products and Fraud in the Sale thereof." The plaintiff in error was charged in the indictment with having sold, and with having in his possession with intent to sell, the prohibited article, in violation of this statute. For the purposes of the trial, it was agreed that he sold, as an article for food, and as butterine, but not as butter produced from pure, unadulterated milk or cream from such milk, an article in packages marked, "oleomargarine butter", and that he had in his possession a certain quantity of the same article, with intent to sell the same as an article of food. In the court below, in order to show, as claimed, that the statute was not a lawful exercise of the police power, the plaintiff in error offered to prove that the articles sold by him, and in his possession for sale, were in fact wholesome and nutritious articles of food. The evidence was excluded and an exception saved. Holding that there was no error in such exclusion, the Court, speaking through Mr. Justice Harlan, said it was entirely consistent with the offer that many, indeed,

most kinds of eleomargarine butter in the market contain ingredients that are or may become injurious to health; that the Court could not say, from anything within its judicial cognizance, that such was not the fact; that under the circumstances disclosed by the record, and in obedience to the settled rules of constitutional construction making every presumption in favor of the validity of a statute, it must be presumed that such is the fact. The Court further said: "Whether the manufacture of oleomargarine, or imitation butter, of the kind described in the statute, is, or may be, conducted in such a way, or with such skill and secrecy, as to baffle ordinary inspection, or whether it involves such danger to the public health as to require for the protection of the people, the entire suppression of the business, rather than its regulation in such manner as to permit the manufacture and sale of articles of that class that do not contain noxious ingredients, are questions of fact and of public policy which belong to the legislative department to determine. And as it does not appear upon the face of the statute, or from any facts of which the Court must take judicial cognizance, that it infringes rights secured by the fundamental law, the legislative determination of those questions is conclusive upon the courts.     *   *   *     The power which the Legislature has to promote the general welfare is very great, and the discretion which that department of the government has, in the employment of the means to the end, is very large.     *   *   *. The Legislature of Pennsylvania, upon the fullest investigation, as we must conclusively presume, and upon reasonable grounds, as must be assumed from the record, has determined that the prohibition of the sale, or offering for sale, or having in possession to sell, for purposes of food, of any article manufactured out of oleaginous  substances or compounds other than those produced from unadulterated milk or cream from unadulterated milk, to take the place of butter produced from unadulterated milk or cream from unadulterated milk will promote the public health, and prevent fraud in the sale of such articles." In *United States* v. *Des Moines Navigation & R. Co.*, 142 U. S. 510, 35 L. Ed. 1899, 12 Sup. Ct. 308, the Court, through Mr. Justice Brown, and quoting from Cooley's Constitutional Limitations, said: "From what examination has been given to this subject, it appears that

whether a statute is constitutional or not is always a question of power; that is, a question whether the Legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which the question is anwered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the Legislature when the act was passed; and if any special finding was required to warrant the passage of the special act, it would seem that the passage of the act itself might be held to be equivalent to such finding."

The contention that the statute is partial and discriminates against persons owning certain kinds of property, without regard to its location, raises the one question of unlawful discrimination. The law applies to all owners and operators of mills, and to no other persons. Is the classification based upon some difference having a reasonable and just relation to the object sought? This is the test by which, according to all the authorities, the question must be determined. It is a matter of common knowledge that sawmills and other mills in which machinery for working in wood is used, of which there are many in this State, necessarily from the nature of the business produce large quantities of sawdust, shavings, and mill refuse, which is generally disposed of in the most convenient manner and with as little expense as possible; and that such mills are, in some instances, located on the bank of a stream, and in some instances, whether portable or stationary, they are located elsewhere, a greater or less distance from any stream or body of water. Is there not reasonable ground for saying that persons, not owners or operators of such mills, are not likely to have sawdust, shavings, or mill refuse, for which they have no use, and which they will deposit in the waters of the streams in question with such frequency and in such quantities as materially to affect the purity of the waters to the injury or destruction of the fish therein? And can it be said that such persons are as likely to engage in the forbidden acts, and be as

harmful to the public interests, as those to whom the provisions of the law apply? Clearly these questions may well be answered, the first, in the affirmative, and the second, in the negative. Thus it is obvious that the difference in circumstances may justify a difference in the regulations for the two classes made by the act, and hence, with the presumption in favor of the validity of the statute, it cannot be said that the classification is arbitrary and without any reasonable basis. The Legislature had the right to determine by whom, that is, by persons of what occupation, deposits of the kinds and nature prohibited were, or were likely to be, made, in the waters and in the locality specified, to an extent injurious to the public interests, and to direct the operation of the act against such persons, to the exclusion of all others, provided that in so doing the classification made is not arbitrary and unreasonable, and the law affects alike all persons similarly situated with reference to the purpose of the act. In the " itinerant vendors case," *State* v. *Harrington,* 68 Vt. 623, 35 Atl. 515, 34 L. R. A. 100, the Court said, whether there was reason to apprehend that vendors, going about from place to place disposing of goods by auction and private sale, will deceive and defraud the public as to the quality of the goods sold, the Legislature must be the judge. In *Missouri Pacific Ry. Co.* v. *Mackey,* 127 U. S. 205, 32 L. Ed. 107, 8 Sup. Ct. 1161, the plaintiff in error contended that a Kansas statute making railroads, but none other, liable to an employee for injuries sustained while in the line of his employment, through the negligence of a fellow servant, was invalid, because it denied to railroads the equal protection of the laws. Overruling this position, the Court, speaking through Mr. Justice Field, said: "But the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees, and no objections, therefore, can be made to legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities. As said by the court below, it is simply

a question of legislative discretion whether the same liabilities shall be applied to carriers by canal and stage coaches and to persons and corporations using steam in manufactories." The Court further said the objection "seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition; but nothing can be further from the fact. The greater part of all legislation is special, either in the objects sought to be obtained by it or in the extent of its application.     *   *   *  . Such legislation  is not obnoxious to the last clause of the 14th amendment if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred and the liability imposed." In *Otis & Gossman* v. *Parker*, 187 U. S. 606, 47 L. Ed. 323, 23 Sup. Ct. 168, the third count in the declaration was for margins paid to the plaintiffs in error as stock brokers on contracts to buy and sell mining stocks, and was based on a provision of the Constitution of California, that, "All contracts for the sale of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction." The answer to this count, beside a general denial, sets up that the provision of the Constitution on which it is based, is contrary to the 14th amendment of the National Constitution, in that, among other things, it unjustly discriminates against that class of property affected by it, thus depriving persons of the equal protection of the laws. On this branch of the case, the Court, by Mr. Justice Holmes, said: "With regard to the objection that this provision strikes at only some, not all, of the objects of possible speculation, it is enough to say that probably in California the evil sought to be stopped was confined in the main to stocks in corporations. California is a mining state, and mines offer the most striking temptations to people in a hurry to get rich. Mines generally are represented by stocks. Stock is convenient for purposes of speculation, because of the ease with which it is transferred from hand to hand, as well as for other reasons. If stopping the purchase and sale of stocks on margin would stop the gambling which it was desired to prevent, it was proper

for the people of California to go no farther in what they forbade. The circumstances disclose a reasonable ground for the classification,    *  *  *  . We cannot say that treating stocks of corporations as a class subject to special restrictions was unjust discrimination or the denial of the equal protection of the laws." In *Missouri, Kansas, & Texas Ry. Co.* v. *May*, 194 U. S. 267, 48 L. Ed. 971, 24 Sup. Ct. 638, the plaintiff in error was prosecuted for the penalty given to contiguous landowners by the "Texas Johnson grass statute", so called, for permitting Johnson grass to mature and go to seed upon its right of way. The statute was challenged as contrary to the 14th amendment of the Federal Constitution. It was admitted that Johnson grass is a menace to crops, that it is propagated only by seed, and that a general regulation of it for the protection of farming would be valid. The contention was, that the particular act subjecting railroad companies to a liability not imposed on other owners of land on which Johnson grass may grow is so arbitrary as to amount to a denial of the equal protection of the laws. The Court, again speaking by Mr. Justice Holmes, said, "it is obvious that the Legislature is the only judge of the policy of a proposed discrimination. The principle is similar to that which is established with regard to a decision of Congress that certain means are necessary and proper to carry out one of its express powers. *McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. Ed. 579. When a state Legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the courts under the 14th amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched." And further, the Court said that approaching the question in this way they were unable to say that the law may not have been justified by local conditions; that it would have been more obviously fair to extend the regulation to highways, at least, yet it may have been found, for all that the Court knew, that the seed of Johnson grass is dropped from the cars in such quantities as to cause special trouble. The same principle was applied in *New York, N. H. & H. R. Co.* v. *New York*, 165 U. S. 628, 41 L. Ed. 853, 17 Sup. Ct. 418. There a judgment was rendered

below against the railroad company for penalties under a New York statute forbidding the heating of passenger cars by stoves or furnaces kept inside the cars. The statute by express terms excluded from its operations railroads less than 50 miles in length, by reason whereof it was urged that it was repugnant to the equality clause of the 14th amendment. The Court, by Mr. Justice Harlan, said a road only fifty miles in length would seldom have a sleeping car attached to its trains, and that passengers traveling on roads of that kind do not have the apprehension ordinarily felt by passengers traveling on trains regularly having sleeping cars or many passenger coaches, from fear of fire in case of derailment, or of collision; and that the statute, being uniform in its operation upon all railroad companies doing business in the state of the class to which it was made applicable, did not so discriminate against such roads as to be a denial of the equal protection of the laws. See also *Barbier* v. *Connolly*, 113 U. S. 27, 28 L. Ed. 923, 5 Sup. Ct. 357; *King* v. *Mullins*, 171 U. S. 404, 43 L. Ed. 214, 18 Sup. Ct. 925; *Consolidated Coal Co.* v. *Illinois*, 185 U. S. 203, 46 L. Ed. 872, 22 Sup. Ct. 616; *Erb* v. *Morasch*, 177 U. S. 584, 44 L. Ed. 897, 20 Sup. Ct. 819; *Ozan Lumber Co.* v. *Union County Nat. Bank*, 207 U. S. 251, 52 L. Ed. 195, 28 Sup. Ct. 89.

It is further urged that the statute unjustly discriminates against mill owners, in that (it is said) such owner, unlike persons not owners or operators of a mill, is made liable for depositing sawdust or shavings in the waters to which the act relates, even though his mill be located at the most remote place in the State from such waters, and the sawdust or shavings by him so deposited never had any relation whatever to his mill. In reply to this position it is enough to say that the respondent is charged with a violation of the law, as an *operator* of a mill, not as an owner, in the town of his residence, and through which, as the Court judicially knows, the Lamoille river passes, and the facts alleged stand admitted by his demurrer. He is therefore not affected by such discrimination, if it exists, and he cannot avail himself of it as an element invalidating the act. *State* v. *Scampini*, 77 Vt. 92, 59 Atl. 201; *State* v. *Barr*, 78 Vt. 97, 62 Atl. 43; *State* v. *Paige*, 78 Vt. 286, 62 Atl. 1017.

The same grounds put forth why the law is in contra-

vention of the 14th amendment, have been urged as reasons why it is in violation of articles 1 and 7 of the State Constitution. What we have said respecting the former is as well an answer to the latter.

*Jugment affirmed and cause remanded.*