## STATE v. JOHN WHEATLEY.

No. A-3226.    Opinion Filed Sept. 29, 1921.
(200 Pac. 1004.)
(Syllabus.)

1.    Indictment and Information—Series of Acts Constituting an Offense—Charging Conjunctively in One Count. Where a statute enumerates a series of acts, either of which or all together constitute the offense, all such acts may be charged in a single count in the conjunctive.

2.    Constitutional Law—Statutes—Constitutionality—Liberal Construction. A liberal construction will be applied to acts of the Legislature and constitutional provisions in determining whether or not such enactments violate the Constitution, and it is only when acts of the Legislature are clearly contrary to the Constitution that the court will hold them invalid.

3.   Same. It is a well-known canon of construction that, where the constitutionality of a statute is involved, it must appear to the court to be unconstitutional beyond a reasonable doubt. To doubt its constitutionality is to uphold it.

4.   **Fish—Power of State to Prohibit Pollution of Waters.** This state may, under its police power, for the protection in the streams, lakes, and ponds of this state, and for the purpose of encouraging the breeding of fur-bearing animals and other game which have access to the public waters of the state, prohibit the depositing of crude oil and other deleterious substances therein.

5.   **Evidence—Judicial Notice of Legislative Policy to Protect Fish and Game.** This court will take judicial notice of the policy of the Legislature to encourage the propagation and protection of the fish and game of the state.

6.   **Statutes—Sufficiency of Title—Act Prohibiting Pollution of Waters.** For reasons holding section 3301, Rev. Laws 1910, as amended by section 11, c. 185, Session Laws 1915, referable and cognate to the subject-matter contained in the title to the act, and not, for that reason, in violation of Const. art. 5, sec 57, see body of opinion.

Appeal from County Court, Osage County; Elmer J. Black, Judge.

John Wheatley was indicted for placing crude oil or other deleterious substances in a natural stream, and from a judgment sustaining a demurrer to the information, the State appeals on reserved questions of law. Reserved questions decided in favor of the State, but because the trial court did not order a new information, the prosecution dismissed.

S. P. Freeling, R. McMillan, and W. C. Hall, for the State.
Leahy & Macdonald, for defendant in error.

MATSON, J. In this case the state of Oklahoma has taken an appeal from a judgment rendered in the county court of Osage county, Okla., sustaining a demurrer to an information filed in said court by the county attorney of said county, the charging part of which is as follows:

"That the said John Wheatley, on or about the 4th day of April, 1917, in said county and state, did willfully and un-

lawfully deposit and place, and permit to be deposited and placed in Wild Horse creek, a stream in said county and state, crude oil and other deleterious substances to affiant unknown, whereby the fish in said stream and the fur-bearing animals and game drinking therefrom and frequenting the same were killed and driven away, and the breeding of fur-bearing animals and fish and game thereby discouraged and prevented, contrary,'' etc.

The demurrer to the information is based on the following grounds:

''First. That said information does not substantially conform to the requirements of chapter 62, Statutes of Oklahoma 1910, in the following particulars, to wit:

'' (a). That the offense sought to be charged in said information is not set out in ordinary and concise language, and not in such manner as to enable a person of common understanding to know what is intended.

'' (b). Said information is not certain and direct as to the offense charged.

'' (c). Said information does not contain a statement of the particular circumstances of the offense sought to be charged.

'' (d). That the act charged as the offense is not stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case.

''Second. That the facts stated in said information do not constitute a public offense.''

This information is based upon section 3301, Revised Laws 1910, as amended by section 11, c. 185, Session Laws 1915, and as amended said section reads as follows:

''No person shall deposit, place, throw, or permit to be deposited, placed or thrown, any lime, dynamite, poison, drug, sawdust, crude oil or other deleterious substance, in any of the

streams, lakes or ponds of this state, and any person violating the provisions of this section shall be punished by a fine of not less than five hundred dollars, or by imprisonment in the county jail not exceeding one year."

It is the contention of the state that the information, being in the language of the statute, is sufficient (the statute setting out the particular acts constituting the offense). Counsel for defendant contend, first, that the information is insufficient for want of clearness and for duplicity, and in support of this contention counsel advance the following argument:

"The pleader in this information attempted to follow to a very large extent the language of the statute, except that in place of the word 'or,' used in the statute, he uses the word 'and.' The statute contemplates that any person who shall deposit or place, or permit to be deposited or placed, crude oil, etc., in streams, shall be guilty of an offense, but it is a distinct and separate offense to deposit or to place, or to permit to be deposited or placed, etc. In other words, the statute covers two, if not four, distinct offenses. We don't know from this information whether we are to be prosecuted for depositing crude oil and other deleterious substances or for placing crude oil and other deleterious substances, or for permitting crude oil and other deleterious substances, to be deposited or placed. Neither do we know whether we are to be prosecuted for depositing crude oil only, or other deleterious substances; nor are we advised by the information as to what the other deleterious substances are composed of. The statute names a number of deleterious substances, the depositing of either one of which, if the statute is good, would be an offense, and is broad enough to make an offense out of the depositing of any deleterious substances in stream, lake, or pond.''

We are of opinion that the information is clearly sufficient and contains a valid charge against defendant for depositing and permitting to be deposited crude oil in Wild Horse creek in Osage county, Okla. Nor do we believe the information bad for duplicity.

In the case of Sherman v. State, 19 Okla. Cr. 269, 200 Pac. 262, this court held:

"Where a statute enumerates a series of acts, either of which or all together constitute the offense, all such acts may be charged in a single count in the conjunctive."

In the body of the opinion it is said:

"It is first contended that the information is duplicitous, in that defendant is both charged with buying and receiving stolen property, which constitute two separate and distinct offenses, and that the court therefore erred in overruling defendant's demurrer to the information on this ground.

"Section 2664, Revised Laws 1910, defines the offense as follows:

" 'Any person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding two hundred and fifty dollars, or by both such fine and imprisonment.'

"The demurrer was properly overruled. The statute defines but one offense, and enumerates disjunctively the acts which, either committed separately or together, constitute the offense. The rule is well established that where a statute enumerates a series of acts, either of which or all together may constitute the offense, all such acts may be charged in a single count, since, though each by itself may constitute the offense, all together do no more and constitute but one and the same offense, and the indictment or information, if it charges more than one of such acts, which it may do and that in the same count, should do so in the conjunctive. State v. Pirkey, 22 S. D. 550, 118 N. W. 1042, 18 Ann. Cas. 192; People v. Swaile, 12 Cal. App. 192, 107 Pac. 134; 22 Cyc. 380; Bishop's Statutory Crimes, § 244."

The statute here under consideration is similar in its provisions to the statute defining the offense of receiving stolen property. By its terms it makes it an offense to deposit or place or permit to be deposited or placed, any substances named or any other deleterious substances in any of the streams, lakes or ponds of this state. If defendant did any one of the acts prohibited by the statute he is guilty of but one offense, and though each by itself may constitute the offense, if he did all of the acts prohibited he did nothing more than commit the same offense, and as held in the Sherman Case, supra, under such a statute the indictment or information may, in the same count, charge defendant with more than one of such acts, and if it does so charge him, it must do so in the conjunctive, as was done in this case.

Counsel for defendant further contend that the section of the statute on which this prosecution is based is unconstitutional and invalid, because the same is not clearly expressed in the title to the act nor is it cognate to the same.

In support of this contention, the following argument is advanced:

"We desire to say that said section 11 is an amendment to section 3301 of the Revised Laws of Oklahoma, which was intended to prevent throwing or using deleterious substances in streams, lakes or ponds of the state, for the purpose of injuring, poisoning or catching fish, and is clear and specific on that point. Section 11 referred to as being an amendment to section 3301 reads as follows:

" 'No person shall deposit, place, throw, or permit to be deposited, placed or thrown, any lime, dynamite, poison, drug, sawdust, crude oil or other deleterious substance, in any of the streams, lakes or ponds of this state, and any person violating the provisions of this section shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not exceeding one year.'

"It will be noticed that this section makes no reference to streams, lakes or ponds containing fish or fur-bearing animals, or in which fur-bearing animals water. It attempts to prohibit depositing, placing or throwing, or permitting to be deposited, placed or thrown, any lime, etc., in any of the streams, lakes or ponds of the state, regardless of whether the stream, lake or pond into which such deleterious substance may be deposited, contains fish, or not, and yet it is well known that generally the ponds throughout the state do not contain fish, but are constructed and kept up as watering places for live stock. Many of the streams throughout the state do not contain fish, for the reason that they are small, and during the dry season of the year do not have any water, and therefore contain no fish. The title to this act reads as follows:

" 'An act relating to fish and game, and providing for encouraging the breeding of fur-bearing animals, fish and game.'

"If this had been an act to protect live stock against poisonous waters, and providing a penalty therefor, this section might possibly be sustained, but the title to this act does not have any reference to live stock; it in no way has anything to do with encouraging the breeding of fur-bearing animals, fish and game, nor does it in any way relate to fish and game, and a section of this character would not be expected to be found under this heading.

"Section 57, art. 5, of the Constitution, provides:

" 'Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title.'

"Section 11 is clearly the embracing of a different subject in the act than the matter of encouraging the breeding of fur-bearing animals, fish and game, and it cannot be said that it in any sense is clearly embraced in the title to the act; neither is the question of a penalty for violation of this section embraced, by innuendo or otherwise, in the title to the act."

Prior to its amendment, section 3301 read as follows:

"No person shall deposit, place, throw or use any lime, dynamite, poison, drug or other deleterious substance in any of the streams, lakes or ponds of this state, for the purpose of injuring, poisoning or catching fish therein, and any person violating the provisions of this section shall be punished by fine of not less than one hundred nor more than five hundred dollars, or by imprisonment in the county jail not exceeding one year."

Section 57, art. 5, of the Constitution, has frequently received construction by the appellate courts of this state, and the established rule now is that the title to an act may be general and need not specify every clause in the statute; it being sufficient if the various provisions are referable to and cognate to the subject expressed. Pond Creek v. Haskell, 21 Okla. 711, 97 Pac. 338; Insurance Co. of North America v. Welch, 49 Okla. 620, 154 Pac. 48, Ann. Cas. 1918E, 471, and cases cited; Adams v. Iten Biscuit Co., 63 Okla. 52, 162 Pac. 938, 942.

In the case of In re E. B. Ambler, 11 Okla. Cr. 449, 148 Pac. 1061, this court held:

"Section 57, art. 5, Const., providing that an act of the Legislature shall embrace but one subject, etc., has reference only to the body of the bill. The provision as to the explicitness of the title to the bill is directory and is not fatal to a measure simply because the title is broader than the act itself.

"It is a well-settled rule, recognized by all the courts, that where a statute is subject to two constructions, one of which would render it invalid, the other sustain its validity, that construction which sustains the validity of the act should be adopted by the court, and this rule is equally applicable to titles to legislative enactments.

"It is equally well-settled that a liberal construction should be applied to the acts of the Legislature and constitutional provisions as well in determining whether or not such enactments violate constitutional provisions, and only when acts of the Legislature are clearly contrary to the Constitution should the court hold them invalid."

It only remains to be seen, therefore, whether or not the depositing of crude oil, etc., in any of the streams, lakes, and ponds of this state, is referable to and cognate to and bears relation to the subject of the protection of fish and game of this state and the encouraging of the breeding of fur-bearing animals, fish, and game.

It is a well-known canon of construction that where the constitutionality of a statute is involved, it must appear to the court to be unconstitutional beyond a reasonable doubt. To doubt its constitutionality is to uphold it. Leach v. State, 17 Okla. Cr. 322, 188 Pac. 118; State v. Coyle, 7 Okla. Cr. 50, 122 Pac. 243; McCord v. State, 2 Okla. Cr. 215, 101 Pac. 280.

We think there is no question but that the state may under its police power, for the protection of food fish in the streams, lakes, and ponds of this state, and for the purpose of encouraging the breeding of the same, as well as for the protection and breeding of fur-bearing animals and other game which have access to the public waters of this state, prohibit the depositing of crude oil and other deleterious substances therein. State v. Haskell, 84 Vt. 429, 79 Atl. 852, 34 L. R. A. (N. S.) 286.

This court will take judicial notice of the policy of the Legislature to encourage the propagation and protection of the fish and game of this state. Fish hatcheries have been established and from time to time sums appropriated for the distribution at the expense of this state of food fish to the various waters of the state. Game preserves have also been established, and the state is annually expending large sums of money to protect and preserve the wild game of this state of all kinds.

It is our opinion, therefore, that it is clearly cognate to the subject of fish and game, and encouraging the breeding of the same, to keep the waters of this state free from deleterious

substances, and this is equally true whether such waters be inhabited by fish at the time said substances are placed therein or not. Fish are a valuable article of food, and various game animals are also valuable for food purposes, and the hides of others are valuable for the purpose of making wearing apparel of different kinds. It is evident that the breeding of fish in this state would be greatly curtailed were not the streams thereof kept free from deleterious substances. It is equally true that the breeding of fur-bearing animals, a number of which inhabit the waters of this state, would be seriously diminished were such waters not kept free from contamination. In the course of time, were poisonous and deleterious substances permitted to be deposited in the streams of this state, fish and fur-bearing animals inhabiting such waters would become extinct. This court is not concerned with the policy of legislation of this kind. That question is solely for the Legislature. We must presume that the Legislature on sufficient evidence determined that the substances named in the statute were of a character detrimental to fish and fur-bearing animals, and also that there might be other substances equally deleterious which were at the time of the passage of the statute unknown to the Legislature.

That the Legislature saw fit to amend section 3301, Revised Laws 1910, by omitting therefrom the clause, "for the purpose of injuring, poisoning or catching fish therein," is of no concern to the court, provided the act as amended is a reasonable exercise of the police power. We think it is. Undoubtedly the Legislature based its action upon evidence of the fact that numerous streams of the state which had formerly contained large quantities of food fish were practically depopulated of fish, because of the fact that their waters had become so thoroughly impregnated with crude oil and other deleterious substances and refuse from the oil, mining, and

manufacturing industries of the state as to render them practically useless and of no value as breeding grounds for fish, game, and fur-bearing animals.

It could with truth be stated that the oil, manufacturing, and mining industries are of greater monetary value to the state than is the policy of the propagation of fish, etc., and that to hamper such industries by legislation of this kind would so handicap them as to prevent their present operation and future development; that this species of legislation forms a practical bar to the proper development of the state's natural resources. Argument of this kind must be addressed primarily to the legislative branch of the government, whose sole duty it is to determine the policy of the law. The judiciary is concerned with the construction of the law as it is written.

The conclusion is reached that section 3301, Revised Laws 1910, as amended by chapter 185, Session Laws 1915, is referable and cognate to the subject-matter contained in the title to the act, and is not, for that reason, in violation of section 57, art. 5, of the Constitution.

In this case the trial court did not order a new information to be filed against defendant. It is the opinion of the court, therefore, that the judgment sustaining the demurrer to the information is final and that the accused may not now be subjected to another prosecution for the same offense. State v. Vaughn, 15 Okla. Cr. 187, 175 Pac. 731, and cases cited; State v. Shafer, 15 Okla. Cr. 610, 179 Pac. 782.

The reserved questions of law are decided in favor of the state, but for the reason that the trial court did not order a new information to be filed the attempted prosecution is at an end, and the cause must be dismissed.

DOYLE, P. J., and BESSEY, J., concur.