## Ex parte W. H. DAVIS.

No. A-9649. June 14, 1939.
(91 P. 2d 799.)

272

274

278

On the same day the case was orally argued by W. L. Coffey and A. Langley Coffey, for petitioner, and Sam H. Lattimore, Assistant Attorney General, for respondent.

Coffey & Coffey, of Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., and M. S. Simms, Asst. Co. Atty., both of Tulsa, for respondent.

DOYLE, P. J. This application for a writ of habeas corpus is brought to secure the release of petitioner being held in custody of the sheriff of Tulsa county, at Tulsa, where he is incarcerated and confined in the county jail by virtue of a commitment based upon an information pending and undetermined in the common pleas court of Tulsa county, wherein the petitioner is charged with having violated section 7 of House Bill No. 125, of the Seventeenth Legislature, ch. 15, art. 3, page 10, Session Laws 1939, 21 Okla. St. Ann. § 970.

Upon the return day the case was orally argued and submitted upon the petition and the demurrer thereto.

This application involves the validity under the State and Federal Constitutions of House Bill No. 125, ch. 15, art. 3, page 8, et seq., Sess. Laws 1939, 21 Okla. St. Ann. § 964 et seq., being the statute under which the information in the court below is based.

Counsel for petitioner in their brief say:

"We have asked this court to consider the constitutionality of this act from several standpoints, both as to its form and application. We believe that it is unconstitutional because on its face it is so indefinite and uncertain as to its terms as to make it impossible to ascertain the legislative intent, and because it is so general in its terms as to render it capable of an arbitrary and capricious application; it is repugnant to and violates section 7 of article 2 of the Constitution of the state of Oklahoma in that it amounts to the taking of property without due process of law.

"It is contrary to and in violation of section 57 of article 5 of the Constitution of the state of Oklahoma in that the subject of said act is not clearly expressed in its title and embraces more than one subject.

"With regards to the petitioner's machine, we want to stress that it is entirely free of the elements of chance and hazard. As heretofore stated the player pays a consideration for the privilege of playing, or entertaining himself at a game which appeals to the competitive spirit which is possessed by us all."

No brief was filed on the part of respondent.

The information upon which the commitment issued charges that on the 15th day of May, 1939, W. H. Davis: "did unlawfully, willfully and knowingly set up, operate, conduct and permitted to be set up, operated and conducted one certain slot machine, to wit: A Cenco Marble Board at 526 South Main street in the city of Tulsa, same being a place of business for the purpose for having and allowing same to be played by others for money, property, currency, checks, chips, tokens, credits and other representatives of value in violation of Section 7 of House Bill 125 of the 17th Legislature of the State of Oklahoma, contrary to" etc.

Section 7 of the act in question reads as follows:

"Section 7. Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted,

in or about any place of business, or in or about any place, whether as owner, employee or agent, any slot machine for the purpose of having or allowing same to be played by others for money, property, tangible or intangible, coin, currency, check, chip, token, credit, amusement or any representative of value or a thing of value, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than Fifty ($50.00) Dollars nor more than One Hundred Fifty ($150.00) Dollars, or by imprisonment in the county jail for a term of not more than sixty (60) days, or by both such fine and imprisonment."

No ambiguity patent or latent appears to us in this section of the statute. The language is explicit; its meaning unmistakable.

In behalf of respondent the point is made that where imprisonment is under the judgment of a court of competent jurisdiction, such judgment cannot be attacked collaterally, or the proceedings inquired into in a habeas corpus proceeding, and this court is precluded from inquiring into the facts alleged in the petition by the provisions of the habeas corpus act, chapter 3, art. 4, sec. 693, 12 Okla. St. Ann. § 1342, which reads:

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following: * * *

"Fourth. Upon a warrant or commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information."

Section 10 of the Bill of Rights, Okla. St. Ann. Const., provides:

"The privilege of the writ of habeas corpus shall never be suspended by the authorities of this state."

It is well settled, by numerous decisions of this and other courts, that the writ of habeas corpus is a writ of right, and cannot be abrogated or its efficiency impaired

by legislative action, and under the constitutional guaranty, the cases within the relief afforded by the writ at common law cannot be placed beyond its reach and remedial action by statute. A court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act, and jurisdiction of the person and of the subject-matter is not alone conclusive, but the jurisdiction of the court to render the particular judgment or issue the process is a proper subject of inquiry; and the proceedings of the committing court will be examined so far as necessary to determine the question of jurisdiction. If there was no legal power to render the judgment, or issue the process, there was no court of competent jurisdiction, and consequently no judgment or process. All is coram non judice, and void. Ex parte Sullivan, 10 Okla. Cr. 465, 138 P. 815, Ann. Cas. 1916A, 719.

Where personal liberty is concerned, the judgment and process of a court affecting it is not so conclusive but that the question of its authority to imprison the party may be reviewed on habeas corpus by a court or judge having power to award the writ. Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759.

It is elementary law that in habeas corpus proceedings jurisdictional questions only are reviewable or to be considered. The writ cannot be invoked for the purpose of reviewing acts of courts of record, where they acted within their jurisdiction, under a constitutional law, any error committed can only be reviewed on an appeal, and it cannot be used as a substitute for an appeal.

Before the writ is available as a means of release from imprisonment, it must appear that the court issuing the process has acted without jurisdiction.

In this case the validity of the commitment is assailed on the ground that the act of the Legislature upon which the information was based is unconstitutional. If the position is well taken, it affects the jurisdiction of the whole

proceedings. An unconstitutional law is void, and is no law. An offense created by it is not a crime, and a charge based thereon cannot be a legal cause of imprisonment.

We are reminded by counsel for petitioner that it is the solemn duty of the courts in cases before them to guard the constitutional rights of the citizen against arbitrary power; that is unquestionably true. This court is bound to sustain the fundamental law, the state Constitution, according to its true intent and meaning. But it is equally true that legislative enactments should be enforced by the courts as embodying the will of the people, unless they are plainly inconsistent with that instrument.

In McCord v. State, 2 Okla. Cr. 214, 101 P. 280, we said:

"To justify a court in declaring an act of the Legislature void, it is not enough that the statute goes to the verge of constitutional power. It must appear clearly that it goes beyond the power. In case of doubt, the law must be sustained."

In State v. Coyle, 7 Okla. Cr. 50, 122 P. 243, we said:

"Every legislative act is presumed to be constitutional, and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is doubt, the expressed will of the Legislature should be sustained."

In Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 P. 179, it is said:

"Every presumption must be indulged in favor of the constitutionality of an act of the Legislature; and courts will not declare any law unconstitutional, unless they find that it is irreconcilable with the Constitution."

In Patterson v. State, 7 Okla. Cr. 497, 124 P. 942, we said:

"The courts cannot annul or pronounce void any act of the Legislature upon any other ground than that of repugnancy to the Constitution of the United States or of the state."

In re Ambler, 11 Okla. Cr. 449, 148 P. 1061, it is said:

"If the statute upon which a judgment is based is valid, and the court has jurisdiction of the person and subject-matter, the writ should be denied."

In Leach v. State, 17 Okla. Cr. 322, 188 P. 118, it is said:

"It is well established that no enactment of the Legislature should be held to be in contravention of the Constitution, unless its unconstitutionality is made to appear beyond any reasonable doubt."

In State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77, 78, we said:

"Nothing but a clear violation of the Constitution, federal or state, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void."

It is contended that this act is in violation of section 57, art. 5, of the Constitution, providing that:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."

This provision of the Constitution has been considered and construed by the appellate courts of this state in numerous cases, and the established rule is that the title to an act may be general and need not specify every clause in the statute; it being sufficient if the various provisions are referable to and cognate to the subject expressed. State v. Wheatley, 20 Okla. Cr. 28, 200 P. 1004, and cases cited. Smith v. State, 47 Okla. Cr. 184, 287 P. 835.

In Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066, this court held:

"It is not necessary for the title to an act of the Legislature to embrace an abstract of its contents. It is sufficient if the title contains a reasonable intimation of the matters under legislative consideration."

The opinion cites numerous cases supporting this rule from states having constitutional provisions substantially identical with this section of the Constitution of this state.

It is to be observed that under the police power, every state has the right to determine what is dangerous and injurious to the public health, public morals, and the public welfare, of its inhabitants. However, the police power is not to be invoked where the subject to which it is directed has no substantial relation to those objects, or for a matter which by law no person ought to be punished.

It is generally held that a slot machine, which in return for a coin deposited therein, dispenses merchandise of the value of the coin, accompanied at occasional and uncertain intervals, by a varying amount of money, trade-checks, or coupons, is a gambling instrument. State v. Johnson, 15 Okla. Cr. 460, 177 P. 926; Nelson v. State, 37 Okla. Cr. 90, 256 P. 939.

It is also generally held that the name given a machine does not determine whether it comes under the statutory classification of a slot machine, but that is determined by the manner and result of its operation. Mackay v. State, 65 Okla. Cr. 149, 83 P. 2d 611.

In 12 R.C.L. p. 729, it is said:

"There are so many kinds of slot machines, differing so much in construction and operation and used for such varied purposes, that it is difficult to lay down any general rule fixing their status with reference to the question of gaming or gambling. A slot machine, it has been said, is not per se a gambling device, since it may be used or played upon for innocent purposes, and the courts cannot therefore take judicial notice that every slot machine is a gambling device, as the use to which it is put must determine its character. In general, however, any slot machine, regardless of its description and although it is a mere automaton which keeps and runs itself, will be deemed to be an unlawful gambling device, where the one who plays the machine stands to win or lose money,

trade checks, or prizes, by a chance, or more broadly, where there is an element of chance in its operation. And where the return to the player is dependent on an element of chance the generally prevailing opinion seems to be that a slot machine is a gambling device even though the player is assured of his money's worth of some commodity, and hence cannot lose." Ferguson v. State, 178 Ind. 568, 99 N. E. 806, 42 L.R.A., N.S., 720, Ann. Cas. 1915C 172; Lang v. Merwin, 99 Me. 486, 59 A. 1021, 105 Am. St. Rep. 293; Painter v. State, 163 Tenn. 627, 45 S. W. 2d 46; 81 A.L.R. 173, see Annotation 177.

In the case of Harvie v. Heise, 150 S. C. 277, 148 S. E. 66, 69, it is said:

" 'In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions.' [City of] Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842.

"In addition to what has been said, even if it should be conceded that it is the sincere purpose of the owner, that the checks be played only for the amusement of the operator, we cannot say that they have no value whatever; for it must be that the amusement or entertainment furnished the player is worth something to him if it constitutes the inducement for him to operate the machine. It is idle to argue that he would spend his money and time in operating the machine for the purpose of obtaining something that is of no value to him—unless we impute to him the lack of that common sense which he is presumed to have. Further, especially in view of the high cost of amusement or entertainment and the immense sums paid for it by people of all classes, it is reasonable to suppose that the owners of the machines, if they expect the amusement or entertainment furnished to operate as an induce-

ment to play, must consider it of some value to the operator."

And see Com. v. Bowman, 267 Ky. 602, 102 S. W. 2d 382.

In the case of Colbert v. Superior Confection Co., 154 Okla. 28, 6 P. 2d 791, Syllabus No. 2, is as follows:

"Nickel slot machine delivering package of mint of reasonable value of five cents and sometimes, in addition, checks usable for further playing of machine for amusement only, held prohibited."

In the body of the opinion it is said:

"It is immaterial whether or not the playing of the slot machines amounts to gambling. The act of playing the machines is prohibited, without regard to whether or not the same amounts to gambling.

"The right of the state to legislate against this character of machine, without regard to whether or not the machines are kept or operated for gambling purposes, has been sustained by other courts. See 27 Corpus Juris 989; 12 R.C.L. 730, and cases therein cited." Citing and quoting from the opinion in State v. Woodman, 26 Mont. 348, 67 P. 1118, 1120, and Nelson v. State, 37 Okla. Cr. 90, 256 P. 939.

And concludes as follows:

"If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act. We are of the opinion that the act is applicable without regard to the value of the things held out as an inducement to the playing of the machine.

"The trial court was in error in granting an injunction restraining the defendants from enforcing the plain provisions of the act in question, and its judgment is reversed, and the cause is remanded to that court, with directions to dismiss this action."

In the case of Mackay v. State, supra, the previous opinions of the appellate courts of this state, relating to

slot vending machines as a gambling device, are elaborately reviewed in the opinion of this court, written by Judge Barefoot, and we approve and reaffirm the principles therein set forth.

The foregoing opinions and authorities therein cited set forth the true principles upon which the statute in question must be sustained as a valid law. If the principles enumerated and the conclusions reached are correct, and we think they are, and hereby adopt them, they conclusively refute and fully answer the contention of petitioner that the statute under consideration in this case is unconstitutional and void.

In conclusion, we simply add that it is apparent from the record, which we have set out in full, that no sufficient cause is shown for the issuance of the writ of habeas corpus. It is therefore denied.

BAREFOOT and DAVENPORT, JJ., concur.