# STATE v. DOLA TYLER.

No. A-10537.　March 6, 1946.
(166 P. 2d 1015.)

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and H. A. Kehn, Co. Atty., of Pryor, for plaintiff in error.

Harve N. Langley and Ernest R. Brown, both of Pryor, for defendant in error.

BAREFOOT, J. Defendant, Dola Tyler. was charged in the county court of Mayes county with the offense of illegal fishing, and that he did "unlawfully take from Grand river, or tributary thereto, a channel cat fish with an illegal device, to wit: a gig, contrary to and in violation of section 261, title 29, Oklahoma Statutes, 1941."

The defendant filed a demurrer to the amended information, but, at the request of the Assistant Attorney General, the same was not passed upon by the court until the evidence was offered by the state.

A jury was waived by all parties, and the case tried by the court. Four witnesses were presented by the state, two deputy game rangers, and two individual citizens of Mayes county. The testimony of these four witnesses was practically the same, and need not be considered separately. The facts were:

The defendant was fishing below the Grand River dam in Mayes county on April 25, 1944, as were numerous other parties. They were fishing in holes of water below

the spillway, which ran into the bed of a former tributary of Grand river. The defendant, when arrested, had a cat fish weighing from five to seven pounds on a hook which he had just taken from the waters above described. The defendant was using a stiff pole about six or seven feet in length, with a cord about 15 feet long to which was attached a large (No. 10) hook. Just above the hook was what is known as a Hawaiian wiggler. There was no bait on the hook. The cord was strung through eyelets on the pole in such a manner that it could be pulled by hand until the hook reached the end of the pole, where it would be stationary. The fish defendant had taken from the water was caught with this hook, behind the gills. It had not swallowed the hook.

The evidence was that the water was muddy, or murky, and that there were many fish, including carp, buffalo, and cat fish in the different holes between the dam and where the gates were closed. They were making every effort to go down stream in the water that was flowing from hole to hole. The game rangers testified that under the conditions existing, the fish would not strike, but were battling and "were fighting for their lives," to get down stream. The game rangers testified that no one else was using a pole and line such as that used by defendant. They demonstrated with the pole and line, which were introduced in evidence, just how it was used by pulling the hook up to the end of the pole, and then dragging it through the water, and catching the fish in the side or gill.

The court, after hearing the evidence, sustained the demurrer to the information, and also sustained the demurrer to the evidence. From this judgment, the state has appealed on a reserved question of law. 22 O. S. 1941 § 1053. The court discharged the defendant, and under

the decisions of this court, he cannot again be placed on trial. 22 O. S. 1941 §§ 508, 509.

We now consider the question of whether the court erred in sustaining the demurrer to the information, and the demurrer to the evidence.

It is conceded that a cat fish comes within the designation of a game fish, as provided by the statutes of this state, 29 O. S. 1941 § 262, which provides:

"Channel cat fish (also known as blue cat, forked tail cat, speckled cat or river cat), * * * are hereby declared to be 'game fish.'"

The statute under which this charge was filed is 29 O. S. 1941 § 261, which provides:

"It shall be unlawful for any person to take or catch from any of the rivers, creeks, lakes or ponds of this State, or any privately owned ponds, which are stocked by State Hatchery Fish, any game fish * * * with any sort of net trammel, net seine, gun, trap, wire or pot, snare or gig, * * *."

It is also provided by 29 O. S. 1941 § 263 (as amended in 1943, 29 O. S. Supp. 1945 § 263):

"It shall be unlawful for any person or persons to take, catch or kill any game fish as defined in Section 15 of said Chapter 35 (Tit. 29 § 262), from any of the streams, creeks, lakes, ponds or waters of this State other than privately owned ponds or lakes by any means, except with hook and line attached to a pole or rod, throw line or trot line; * * *."

This court has been liberal in construing informations or indictments, and has often held that they were sufficient if the offense is charged in the language of the statute. It has often been held that an information is sufficient if it informs the accused of the offense with

which he is charged with such particularity as to enable him to prepare for his trial, and so defines and identifies the offense, that, if convicted or acquitted, he will be able to defend himself against any subsequent prosecution for the same offense. Simpson v. State, 67 Okla. Cr. 152, 93 P. 2d 541; Scott v. State, 40 Okla. Cr. 296, 268 P. 312; Newman v. State, 44 Okla. Cr. 137, 279 P. 980; Armour v. State, 72 Okla. Cr. 44, 112 P. 2d 1116; Daves v. State, 77 Okla. Cr. 343, 141 P. 2d 603; Ross v. State, 78 Okla. Cr. 293, 147 P. 2d 797.

We have held in some cases that the peculiar wording of the statute was such that it required the indictment or information to be more definite and certain to the end that the defendant could be brought within the rule announced above. Duggins v. State, 76 Okla. Cr. 168, 135 P. 2d 347; O'Neil v. State, 76 Okla. Cr. 107, 134 P. 2d 1033.

In this case the defendant was charged with a misdemeanor, and the information charged him in the words of the statute, and was sufficient as against a general demurrer.

We have, with much interest, read the briefs submitted relative to the contention that the court erred in sustaining the demurrer to the evidence, and holding that the same was insufficient to establish an offense against the laws of this state.

It may be noted that this case was tried before the court without the intervention of a jury. From the record before us, the court did not decide the case on its merits, or determine any question of fact, but decided the same on a question of law, by sustaining the demurrer to the information, and the demurrer to the evidence. In other words, under the holding of the court, if the case had been

tried to a jury, the court as a matter of law would have sustained the demurrers, and directed the jury to return a verdict of acquittal. In our opinion, this was error. The evidence of the state was such that as a question of fact, it could have been concluded that the manner of the use of the pole, cord and hook by defendant was such as to bring it under the terms of a violation of the statute. The evidence was that the hook, which was much larger than generally used, was drawn to the end of the pole where it became stationary, and was then dragged through the water and the fish caught in the side or gill. It was not used for casting, as is usual with rod and reel. There is no evidence that a reel was even on the pole. The fish was caught in the gill on the outside and as the witnesses testified by dragging the pole through the water while the hook was stationary at the end thereof. The Hawaiian wiggler attached to the cord was of no benefit, and a jury could have reached the conclusion that it was being used only as a subterfuge in an attempt to comply with the law. The nature of the pole, line and hook and the manner of its use was a question of fact to be decided as to whether the defendant was attempting to violate the terms of the statute by the use of such paraphernalia.

The statute contains the word "gig," and this word is used in the information. We have been surprised to find that Words and Phrases and a number of law dictionaries do not define this word. But Webster's New International Dictionary, second edition, defines the word "gig" as follows:

"Gig. Noun. An arrangement of hooks to be drawn through a school of fish when they will not bite, in order to hook them in their bodies."

The evidence of the state in this case comes clearly within the above definition. The evidence would justify

a finding that the fish which defendant had in his possession was caught in this very manner. In fact, some of the witnesses so testified. We can not consider the statement that others were catching fish where defendant was fishing, or that the fish would perish if not taken by someone. This was a matter for the serious consideration of the Fish and Game Department. In the case of State v. Wheatley, 20 Okla. Cr. 28, 200 P. 1004, 1007, this court, in an opinion by Judge Matson, said:

"This court will take judicial notice of the policy of the Legislature to encourage the propagation and protection of the fish and game of this state. Fish hatcheries have been established and from time to time sums appropriated for the distribution at the expense of this state of food fish to the various waters of the state. Game preserves have also been established, and the state is annually expending large sums of money to protect and preserve the wild game of this state of all kinds."

Since that opinion was written, many game and fish laws have been enacted and this state is fast becoming one of the leading fishing and hunting sections of the country. Every true sportsman should and will lend a willing hand in assisting the Game Commission in bringing the Department to the highest standards possible. The decisions of the courts of the various states very generally uphold the acts of Legislatures for the protection of both fish and game. The wisdom of passing legislation such as is now under consideration is a question for the legislative branch of the government, and the courts are only concerned with the proper construction of the law as it is written.

In this case the court did not order a new information to be filed. The demurrer to the evidence was sustained and the defendant was discharged. Under the law and former decisions of this court, this is final as to the

defendant, and he may not be subjected to further prosecution for this offense.   State v. Waldrep, 80 Okla. Cr. 230, 158 P. 2d 368; State v. Gray, 71 Okla. Cr. 309, 111 P. 2d 514; State v. Wheatley, 20 Okla. Cr. 28, 200 P. 1004; State v. Vaughn, 15 Okla. Cr. 187, 175 P. 731; State v. Shafer, 15 Okla. Cr. 610, 179 P. 782.

The reserved questions of law are decided in favor of the state, but for the reasons above stated, the prosecution is at an end.

JONES, P. J., concurs.   DOYLE, J., not participating.