## AKIN & DIMOCK OIL CO. v. STATE.

No. A-11536. April 9, 1952.

(243 P. 2d 384.)

Wm. T. Powell, Walters, for plaintiff in error.

Mac Q. Willaimson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

BRETT, P. J.  The plaintiff in error, Akin & Dimock Oil Company, defendant below, was charged in the county court of Cotton county, Oklahoma, with the offense of polluting a stream, Beaver Creek, a habitat of fish, by permitting deleterious substances, to wit, crude oil, to flow therein by way of Goodin Creek from defendant's two oil wells, No. 6 and No. 2, thus endangering the lives of the fish and other wild life, all in violation of law, Title 29, § 273, O. S. A. 1941.  To the charge the defendant entered its plea of not guilty.  It filed its motion to said charge requesting the state to be required to elect whether the state would rely on the proposition that the offense occurred on

May 12 or on some other date. In addition thereto, said motion requested the state be required to elect as between the No. 6 well located on the Roberts lease or the No. 2 located on the Schneeberger lease as the source of the polluting oil. This motion was not presented until the day of trial and after both parties announced ready for trial, and the jury was in the box for voir dire examination. At this time counsel for defendant urged that portion of the motion relating to the time the offense occurred, the state was granted leave to amend so that the information then read "on or about May 12, 1950". At no time in the proceeding was the matter urged in relation to from which well the oil was permitted to escape. When the state concluded its evidence the defendant demurred to the sufficiency of the evidence which was by the trial court overruled. The defendant thereupon offered his proof and renewed his demurrer at the close of the evidence which was likewise overruled. The case was submitted to the jury after instruction and agreement, and it returned a verdict of guilty and assessed a fine of $250, from which this appeal has been perfected.

On this appeal the defendant urges first, that the trial court erred in not requiring the state to elect as to which of said wells No. 6 or No. 2 was the offending well. It clearly appears from the record herein, that the defendant at no time urged the motion to elect as between the said two wells. Hence we can assume that the same never having been urged and presented to the trial court was abandoned. In any event, not having been presented to the trial court it forms no basis for objection herein.

The defendant then complains that the evidence was insufficient to sustain the conviction. He says the state failed to prove the fact that the offending wells belonged to Akin & Dimock Oil Company. Moreover, it failed to prove whether the said wells individually were owned as a copartnership or as a corporation. The defendant contends that the evidence was only sufficient to show that J. W. Akin and George Wagoner Dimock together with the Sloan Zook Oil Company, a corporation, each owned a one-half interest in the oil lease covering Well No. 2, the Schneeberger lease. The lease identified by the county clerk and offered in evidence only establishes ownership into said No. 2 Well in the Schneeberger lease with title being vested in the parties as hereinbefore set forth. The defendant overlooks the proposition, however, that L. E. Crawford, Game Ranger, testified for the state without objection that the wells from which the oil in question was flowing were located on the Schneeberger and Roberts lease, which was the property of Akin & Dimock Oil Company. Nothing appears in the record to the contrary. Moreover, the defendant overlooks that Fred Walker testified without objection for the state that he knew the location of the Akin & Dimock oil wells and that they and the oil pits involved herein were just across the road from Mr. Mitchell's place. He further testified that the oil pits were about 50 or 75 yards from the road and that the land sloped away from these wells to the road across Mitchell's place. We are of the opinion that this was sufficient identification of the property herein involved and its ownership to go to the jury. Thereafter E. C. Aynesworth testifying for the defendant removed any doubt as to the ownership when he testified he worked for the Akin & Dimock Oil Company as a pumper and in such capacity he was in charge of the wells herein involved.

Next, on the question of liability under the statutes, the defendant urges that the statute defining the offense of pollution, Title 29, § 273, O. S. A. 1941, provides, "No person shall deposit, place, throw or permit to be deposited, placed or thrown, any * * * crude oil * * * in any of the streams, lakes or ponds of this state," then fixing the penalty therefor. The defendant says that it was the clear intent of the Legislature to create only a personal liability, and the person or persons operating the oil lease should be prosecuted in these cases.

In this the defendant is in error for the provisions of Title 29, § 122, O. S. A. 1941, define the term "person" as including, "firm, corporation or association, and shall also include principal, agent or employee". It thus clearly appears the term is inclusive of every character of offender including the Akin & Dimock Oil Company, either as an association, corporation or as principal. The charge might have included Mr. Aynesworth as agent or employee.

On the question that oil was permitted to flow from these two wells across the road into Goodin Creek, Mr. Crawford, Game Ranger, testified that at the time in question he found oil flowing from the two Akin & Dimock wells in a ditch running easterly across the Mitchell property. He further testified that the concentration of oil was so great in Goodin Creek that it spread out over the alfalfa field and that the concentration was so great in Beaver Creek at the time herein involved that he saw fish gasping for breath and that as a result thereof many of them died. This evidence is undisputed. In fact it is partially corroborated by Fred Walker, a farmer, who testified he walked through the Mitchell alfalfa and observed oil covering about 4 or 5 acres of said crop.

A. H. Kriewald testified for the state that Mitchell's alfalfa had oil on it and he saw oil running across the road from the wells located across the road from Mitchell's place. He did not know who owned the wells. On this question E. C. Aynesworth, hereinbefore referred to as a pumper for Akin & Dimock Oil Company, admitted he had said, "Well, I let a little oil get away and I suppose the game warden will turn us in on it". He testified it was only about a barrel or a barrel and a half of oil that got away. He further testified he had burned the pits off only a few days prior to the big rain. In this connection, we cannot refrain from commenting that if only a barrel or even a barrel and a half of oil escaped and the rain was as heavy as defendant would have the court believe, it would have been lost in the water and would not have been so evident in the alfalfa field. Moreover, it would have been insufficient to have produced the effect upon the fish which this record shows prevailed. The rain constituted the defendant's defense, to the effect that the loss of the oil was an act of God. In this connection the record shows Fred Walker said he had a rain gauge on his place and that it showed a seasonal rainfall consisting of about 7 inches over a period of 3 or 4 days, about 3½ inches of which fell about the 10th day of May. It further showed that there was a pretty good shower at the Mitchell place, but that it rained more to the south. Aynesworth testified in this connection that the pits were entirely adequate under normal conditions, but Mr. Crawford testified the pits were inadequate and were just roughly thrown up with a bulldozer. Photographs of these pits admitted in evidence were not convincing from the defendant's standpoint. The oil evident on the alfalfa and vegetation was most convincing against the defendant. We repeat, if as the defendant's evidence showed only a barrel or a barrel and a half of oil escaped and the downpour was as it contended certainly that quantity of oil would have dissipated itself without damage. We believe the physical facts dispute the defendant's evidence as to the quantity of oil. In any event there was a conflict in the competent evidence which presented a question of fact for the jury. However, there is no conflict that the fish were gasping for breath and died as a result of this pollution of Beaver Creek. The jury found the facts against the defendant and we are bound thereby in the face of the foregoing record. Sadler v. State, 84 Okla. Cr. 97, 179 P. 2d 479.

The defendant contends there was no negligence shown on the part of the defendant. No such showing is necessary to hold the defendant liable. Magnolia Pipe Line Co. v. State, 95 Okla. Cr. 193, 243 P. 2d 369:

"While the state in order to make out a prima facie case under Tit. 29 O. S. 1941 § 273, was only required to show either that the accused deposited,

placed, threw, or permitted to be deposited, placed, or thrown, any lime, dynamite, poison, drug, sawdust, crude oil or other deleterious substance, in any of the streams, lakes or ponds of the State, (and without reference to negligence), where the evidence on behalf of the State showed only that the deleterious substance was the property of the accused, held, that as a defense the accused was entitled to show that the pollution was caused by a third party over whom defendant had no control, and that accused had used due diligence in the premises, or it might have been shown, if such had been the fact, that the pollution was caused by sabotage or vis major."

Nor is criminal intent necessary, as was said in Magnolia Pipe Line Co. v. State, supra:

"But the State is only required to show that the deleterious substances mentioned in the statute were under the control of, or belonged to the accused, and got in the public waters. After the State has thus made a prima facie case against the accused an issue of fact is presented for determination of the jury."

On no other basis can the object or purpose of this statute be effected, as was said in the Magnolia Pipe Line Company case, supra:

"The statute in question was enacted under the police power of the State. Some of the reasons bringing about the enactment are mentioned in the early case of State v. Wheatley, 20 Okla. Cr. 28, 200 P. 1004, where this court, after enumerating the basic facts, said:

" 'The state may, under its police power, for the protection in the streams, lakes, and ponds of this state, and for the purpose of encouraging the breeding of fur-bearing animals and other game which have access to the **public** waters of the state, prohibit the depositing of crude oil and other deleterious substances therein.' (Italics now added.)"

See the Magnolia Pipe Line Company opinion supra for an extensive construction on both the question of intent and construction of the words "permit" and "allow". In its conclusion therein Judge Powell said:

"Of course the word "permit' or the closely related word 'allow' or 'suffer' imply that only the forbidden substances where belonging to or under the control of the person to be charged, (who by such fact stands in responsible relation to the public danger sought to be averted) brings him under the act and requires him to assume the burden set out. If a person does not own or have control of the deleterious substances in question, then he would not be responsible for the action of other persons. He might be morally obligated to at least try to prevent the pollution, but it is elementary that he could not be legally obligated. On the other hand, if the person does own or control such substances, then it matters not with what intent the substances would be deposited in the waters, the damage would be the same. By reason of the vital public interest the State has enacted a measure in ultimate effort to prevent the damage."

Further, the defendant contends the trial court erred in permitting the state on cross-examination of Bill Mitchell subpoenaed by the state and offered by the defendant, to testify that the Akin & Dimock Oil Company paid him for damages to his alfalfa. The state did not call Mitchell as a witness. When the defendant made his case announcement was made by defendant's counsel he would call the witness Mitchell who had been subpoenaed by the state. No doubt this announcement was made with a flourish and assurance of captivation. The defendant complains that the state was permitted to cross-examine the witness Mitchell on the proposition of the settlement which he made with the defendant company. The state contends, and we believe rightfully so, it was entitled to show by this witness the reason the state did not use him to the effect he had told Mr. Vantine, sheriff of Cotton county, that the Akin & Dimock Oil Com-

pany had paid him for his damages, that they were friends of his and he did not want to testify in the case. It is apparent the state believed him to be a friendly witness when he was subpoenaed but learning of his being paid damages and the statement he made, the state regarded him as hostile and was afraid to use him, because of his bias in favor of the defendant. In Castleberry v. State, 10 Okla. Cr. 504, 139 P. 132, 134, it was said:

"It is well settled that in a criminal case a witness on cross-examination may be questioned as to his relations and feelings of friendliness or hostility towards the defendant.

"In Underhill on Crim. Ev., § 221, it is said: 'Questions put to the witness for the purpose of ascertaining his relations, business, social, or otherwise, with the accused and his state of mind, whether hostile or friendly towards him, are unobjectionable."

Such evidence would be proper as going to the witness' credibility. Starks v. State, 67 Okla. Cr. 156, 93 P. 2d 50, wherein it was said:

"A witness for the defendant may be cross-examined as to specific acts tending to discredit her, when such facts are relevant to the issue."

This evidence, however, was admissible only for the purpose of showing Mitchell's great friendliness and bias in favor of the defendant. It was not admissible as the state contends as tending to prove the guilt of the defendant. The defendant was entitled to an instruction limiting this showing of bias, as going only to the credibility of Mitchell as a witness, and not as to the guilt of Akin & Dimock Oil Company. If a proper request had been made for such instruction it would have been error to refuse it.

In this same connection, the state contends there is an inconsistency in the settlement with Mitchell and the defendant's subsequent defense of an act of God, in this criminal proceeding. Such is not the case. There is no inconsistency evidenced by the settlement in a civil liability to Mitchell and the defense of the act of God in a criminal case against the defendant. If a favorable settlement had not resulted, the defense in the event of a suit for civil damages would undoubtedly have been an act of God. Thus it is obvious that the evidence of compromise was admissible as going only to Mitchell's credibility as a witness and was admissible for no other purpose.

Finally, the defendant contends that under the state's theory all that is necessary to prove is that oil escaped from the defendant's wells and polluted the Goodin and Beaver creeks. Under the statutes and Magnolia Pipe Line Co. v. State, such is the law. This being done then a prima facie case has been made, creating an issue of fact for the jury. We think the Legislature intended to place a duty on oil companies to prevent the pollution of streams of this state. This duty is certainly more than passively sitting by and permitting some positive or affirmative act, or by failure to act permits some condition to exist which causes pollution. This duty is that of taking all reasonably prudent precautions to prevent the escape of crude oil, basic sediment, salt water or other deleterious substances. Anything less must be held to create criminal responsibility. We so held in the Magnolia Pipe Line Company case, supra. Under the conditions herewith presented the judgment and sentence is accordingly affirmed.

JONES and POWELL, JJ., concur.