## In re Pleasant Township

*James D. McDonald*, for Pleasant Township.
*Richard S. Ehmann*, for Department of Environmental Resources.

COHEN, *Member*, March 14, 1975—The Department of Environmental Resources (hereinafter "DER") has commenced this action to have the board assess a civil penalty against the Township of Pleasant, Warren County, Pa., for a discharge of liquid industrial wastes into an unnamed tributary of the Allegheny River. The parties have filed a stipulation in this matter wherein they have set forth facts material to the disposition of the case and have further agreed to have the board at this time determine whether the defendant-township is liable for a civil penalty because of such discharge. The parties have further agreed that the board will rule on the petition of DER to have a "default judgment" entered against the township.

## FINDINGS OF FACT

1. That defendant, Township of Pleasant, is a township of the second class located in Warren County, Pa.

2. That the Allegheny River and several of its tributaries pass through and near the defendant-township.

3. That within the boundaries of the township is located a "pond" or "lagoon" filled with acid wastes of industrial origin.

4. That the said acid pond originated more than 30 years ago as a dump for an oil refinery which had been located nearby.

5. That defendant is in no way responsible for the creation of the acid pond.

6. That the acid pond was in private hands until September 8, 1970, when the pond and the adjacent land was conveyed as a gift to defendant-township by Ida C. Wenzel and Luther Wenzel, her husband, by deed recorded in Warren County Deed Book 364, at page 250.

7. That defendant accepted this parcel of land in order to eliminate the pond and to convert the site into recreational area and an area where municipal facilities could be located.

8. That before the discharge of September 27, 1972 (on which discharge this action is based), defendant undertook to fill said pond and thereby to gradually dissipate its contents and to remove its detrimental effects.

9. The pond was inspected by personnel of plaintiff on September 16, 1970, November 19, 1970, and April 6, 1972, and no charges were filed against the township prior to the discharge of September 27, 1972.

10. That immediately before the discharge of September 27, 1972, the area in which the pond is located experienced rainfall, specifically, 1.30 inches from September 24, 1972, through September 27, 1972, and .96 inch on September 27, 1972.

11. That on or about September 27, 1972, the pond did discharge liquid industrial wastes containing a high concentration of alkyl sulfonates into an unnamed tributary of the Allegheny River, the contents of this discharge being a noxious and deleterious substance which temporarily rendered unclean certain waters of the Allegheny River and did kill some fish therein.

12. Since the discharge of September 27, 1972, defendant is filling this acid pond under supervision of the Department of Environmental Resources.

13. That at no time did defendant possess a permit issued pursuant to the Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq., either for a discharge from this lagoon or for the lagoon itself.

14. That by prehearing order no. 1 issued on February 6, 1974, the board ordered the parties to submit prehearing memoranda with defendant's to be filed within 20 days of receipt of the Commonwealth's prehearing memorandum.

15. The Commonwealth's prehearing memorandum was due on or before March 29, 1974, and was filed with the board on March 5, 1974, and received by defendant on March 6 or 7, 1974.

16. The township's prehearing memorandum was filed with the board and received by the Commonwealth on April 18, 1974.

17. The Commonwealth filed a motion for default judgment with the board on April 3, 1974.

18. Counsel for the township filed its answer to the motion for default judgment on or about April 4, 1974.

19. The Commonwealth's motion was denied on July 17, 1974, without prejudice and is still pending before the board.

## DISCUSSION

DER is vigorously pressing the board to grant its petition for a "default judgment" against the township for the reason that it did not file its prehearing memorandum within the time specified by the board's prehearing order no. 1. The rules of the board do not expressly provide for default judgments. Section 21.18(b) of the rules provides that any party failing to respond to a complaint, new matter, petition or motion shall be deemed to be in default and, at the board's direction, sanctions may be imposed in accordance with section 21.41 of the rules. This section provides:

"The board may impose sanctions upon a party for failure to abide by a board order. Such sanctions may include the dismissal of any appeal or an adjudication against the offending party, orders precluding introduction of evidence or documents not disclosed in compliance with any order, barring the use of witnesses not disclosed in compliance with any order, barring an attorney from practice before the board for repeated violations of orders or such other sanctions as are permitted in similar situations by the Pennsylvania Rules of Civil Procedure for practice before the Courts of Common Pleas."

Although this board entered what purported to be a "default judgment" in Commonwealth v. Froehlke, EHB docket no. 72-341 (issued July 31, 1973), it, in effect, only invoked sanctions authorized by sections 21.18(d) and 21.41 of its rules. The mere fact that the board denominated its action as a "default judgment" should not obscure the fact that it was invoking sanctions authorized by its rules.

Under the Pennsylvania Rules of Civil Procedure, default judgments may be entered in both

actions at law and in equity. Rule 1037 thereof provides for default judgments in assumpsit actions, while Rule 1047(a) covers default judgments in trespass actions. Defaults in equitable actions are covered by Rule 1511. In all these cases, the entry of a default judgment is a ministerial act performed by the prothonotary upon the praecipe of plaintiff. The imposition of sanctions against a party is a judgmental decision by the board for failure to abide by board orders or otherwise being in violation of the board regulations. Thus, the imposition of sanctions by the board is a decision that involves the exercise of the board's discretion. The board is of the opinion that to impose sanctions upon defendant-township in this case would serve no useful purpose. Moreover, the substantial question of liability in this matter inclines us to adjudicate that matter, rather than adjudicate this case on a peripheral issue.

In a civil penalties action, the Commonwealth has the burden of proof. See section 21.42 of the Rules of Practice and Procedure before the board: 25 Pa. Code §21.42. The stipulated facts of this case show that on September 27, 1972, pollutants entered an unnamed tributary of the Allegheny River after a substantial rainfall occurring from September 24, 1972, to and including September 27, 1972. These pollutants emanated from a lagoon upon defendant's property. The legal question presented by these facts is whether defendant violated the provisions of the Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq. The answer to this question de pends upon whether defendant municipality violated any duty imposed upon it by the Clean Streams Law, supra.

Section 301 of the Clean Streams Law, supra, provides:

"No person or municipality shall place or permit to be placed, or discharged or permit to flow, or continue to discharge or permit to flow, into any of the waters of the Commonwealth any industrial wastes, except as hereinafter provided in this act."

It is conceded that the discharge which is the subject matter of these proceedings was neither permitted by the Department of Environmental Resources nor conformable to its rules and regulations. Under such circumstances the discharge could not have been authorized by section 307 of the Clean Streams Law, supra, which provides, inter alia, that no person or municipality shall discharge or permit the discharge of industrial wastes in any manner, directly or indirectly, into any of the waters of the Commonwealth unless authorized by rules and regulations of the Environmental Quality Board or pursuant to a permit from DER.

Because of the manner in which the discharge in this matter took place, a question has arisen as to whether such was a discharge by defendant municipality in violation of the Clean Streams Law, supra. It is clear that the discharge was not intentional as that term is understood in the law. However, nothing in the Clean Streams Law predicates a violation thereof on the intention of any party. Moreover, in Commonwealth v. Sonneborn, 164 Pa. Superior Ct. 493, 66 A. 2d 584 (1949), violations of the Clean Streams Law, supra, were characterized as malum prohibitum, so as to render wholly immaterial a party's intent in connection with a violation of that act.

Nor do we think that, in the absence of an intentional discharge of industrial wastes contrary to the

provisions of the act, a violation thereof must be predicated upon negligence. We believe that the legislature in its various amendments to the Clean Streams Law, supra, particularly those of 1965 and 1970, intended to embody the principles of strict liability insofar as discharges of pollutants to the waters of the Commonwealth are concerned. Any other inference would not comport with the manifest intent of the legislature to protect the waters of the Commonwealth from contamination and pollution as indicated by its substantial amendment of that law in 1959 and 1970.

The principles of strict liability derive from the rule in Rylands v. Fletcher, 1868, L. R. 3 H. L. 330. See also Prosser, Law of Torts §78 (4th Ed., 1971).

In the matter before us, we are of the opinion that defendant-municipality breached its duty in failing to maintain the lagoon on its property in such a manner as to prevent discharges from occurring therefrom resulting from foreseeable natural phenomena against which adequate protection was not taken in this case. This is not a case in which "an act of God," not reasonably foreseeable, caused the discharge. The discharge was caused by moderately heavy rains during a period of a few days. Such rains were clearly a foreseeable natural event which, under the circumstances of this case, could have been foreseen by defendant. We believe that the principles stated in Akin & Dimock Oil Co. v. State, 95 Okla. Crim. 218, 243 P. 2d 384 (1952), is the principle to be adopted in cases of this sort. In the annotation in 32 A.L.R. 3rd 215, at page 272 in which Akin & Dimock is reviewed, it is stated:

". . . The defendant company also argued that it had not been negligent and that the heavy rain had

been an 'act of God,' but the court held that no showing of negligence or criminal intent was necessary to hold the defendant liable, because the legislature had intended to place a duty, higher than ordinary care, on oil companies to prevent the pollution of streams of the state. This duty, the court explained, is that of taking all reasonably prudent precautions to prevent the escape of crude oil, basic sediment, salt water, or other deleterious substances."

We, therefore, find that the defendant-municipality discharged industrial wastes into waters of the Commonwealth in violation of the Clean Streams Law, supra, and that such violation may form the basis for the imposition of a civil penalty in this matter. Inasmuch as the parties have stipulated that they do not wish to litigate at this time the extent of the civil penalty, we refrain from any action at this time other than finding a violation of the law.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and subject matter of this proceeding.

2. The principles of strict liability apply to unintentional discharges of industrial waste to waters of the Commonwealth which are otherwise not authorized by the Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq.

3. Defendant, Township of Pleasant, Warren County, Pa., violated the provisions of the Clean Streams Law, supra, by the discharge of industrial wastes from its lagoon into the waters of the Commonwealth.

## ORDER

And now, March 14, 1975, it is hereby ordered that the Township of Pleasant, Warren County, Pa., shall pay into the Clean Streams Fund a sum to be determined by the board at a later time after hearing upon the issue of the size of the civil penalty for which defendant may be liable according to the principles enunciated in this adjudication.